No. 40,063

CHARLES C. MAY, *Petitioner*, v. ARTHUR HOFFMAN, Warden,
Kansas State Penitentiary, *Respondent*.

(293 P. 2d 265)

Opinion filed January 28, 1956.

Petitioner was on the briefs *pro se.*

*Harold R. Fatzer*, attorney general, and *James L. Galle*, assistant attorney general, were on the briefs for the respondent.

The opinion of the court was delivered by

ROBB, J.: This is an original proceedings for a writ of habeas corpus filed by petitioner, Charles C. May, wherein he challenged the legality of his detention in the state penitentiary at Lansing.

Facts gleaned from the record show that petitioner was sentenced by the district court of Reno county to a term of from one to ten years for the crime of second degree forgery. He began serving the sentence in July, 1947. He escaped from the penitentiary at Lansing in August, 1947, but was recaptured and returned in November, 1947.

Petitioner claims that he was told that all his good behavior time had been forfeited; he states that the only good time that can be forfeited is that which has been earned by the inmate; that good time is not given to an inmate in a total sum when he first enters prison; that an inmate can have no future good time forfeited because he has not yet earned it; he complains that the respondent warden does not have, nor did his predecessor have, the right to forfeit the good time of petitioner under the statutes of Kansas.

Respondent filed his answer, which we do not deem necessary to set out in full because the record, as we will hereafter discuss it, reflects the allegations thereof.

The record shows that on June 23, 1947, petitioner was charged in an information with the commission of the crime of forgery to which charge petitioner pleaded guilty on July 8, 1947, and was

sentenced to the state penitentiary at Lansing for a term of from one to ten years. Petitioner was admitted to the penitentiary on July 11, 1947, and escaped therefrom on August 14, 1947. On the order for arrest it was noted that petitioner owed seven years, eleven months, and twenty-seven days' time. The date of his return to the penitentiary, as already mentioned, was in November, 1947.

After petitioner had served four years and six months of solid time, he was paroled from confinement on April 3, 1951, but not from legal custody of the warden, subject to the usual conditions of a parole contract which contract was accepted and signed by petitioner on April 22, 1951, following approval of the parole by the governor of the state on April 16, 1951. The violation clause of the parole contract was as follows:

"The violation of any of the above rules or the violation of the law in any way, will constitute violation of the parole contract and the parolee may be declared delinquent and treated as an escaped prisoner owing time to the State of Kansas. At such time as he may be returned to the penitentiary he may be required to serve the remainder of his maximum term and no part of the time which may elapse from the date of his delinquency to the date of his return to Kansas State Penitentiary shall apply to his maximum term."

Petitioner became delinquent January 8, 1952, by failure to report monthly and for leaving his place of residence and employment without permission. The record clerk reported this to the board of administration (now the board of penal institutions [G. S. 1955 Supp. 75-3751] hereinafter referred to as the penal board) and stated further that petitioner's whereabouts were unknown and that he owed three years and ten months' time. Upon this report the penal board ordered that a warden's warrant be issued ordering that petitioner be returned to serve out his unexpired term. The warrant so issued provided that petitioner owed three years and ten months' time.

Petitioner was charged with larceny of a motor vehicle in the district court of Reno county on September 26, 1947. He pleaded guilty and was sentenced to a term of from five to fifteen years in the state pentitentiary. While a bench parole did not appear of record, there was a journal entry set out in the record wherein it was recited that on June 13, 1952, there was a motion for revocation of petitioner's parole which had been granted on April 24, 1952. Petitioner was therein referred to as Charles May, Jr., his parole was revoked, and he was ordered upon completion of his term in the

United States penitentiary at Leavenworth, to be removed to the state penitentiary at Lansing to serve the sentence of from five to fifteen years for larceny of an automobile.

The following is a statement of petitioner's time as shown by the records of the clerk of the state penitentiary:

"In accordance with the order of the Board of Administration, now known as the Board of Penal Institutions, subject forfeited 365 days Institutional Good Time for escaping. Since he did not have this much Institutional Good Time to his credit, at the time of his escape, he had to make up this good time at the rate of 8 days per month, which is what the Board allows the inmates each month provided they maintain a clear record during that time.

"Subject was paroled 4-22-51, delinquent 1-8-52, returned with a new commitment 8-29-54. He was gone 2 months and 25 days on escape, and he was delinquent 2 years, 7 months and 21 days. This time he must make up, as it is dead time.

"Subject started earning Institutional Good Time in September 1955, during which month he was credited with 3 days, and is now earning Institutional Good Time at the rate of 8 days per month the same as the other inmates. His Statutory Good Time was not affected by his escape, and he has received full credit for all the Statutory Time allowed by law on his sentence.

"Up to and including November 1957, he will have received a total of 211 days Institutional Good Time, which, when deducted from his Statutory Maximum of 6-29-58 brings his discharge date to 11-29-57, less 10 days Governor's Time which brings his net discharge date of 11-29-57 to 11-19-57, at which time he will be rebooked on his new commitment."

Petitioner then filed what he termed a "Motion to Hear," which upon reading appears to be either a reply to the answer of respondent or a supplement to his original petition for the writ. It adds nothing to the record not covered by his original papers filed in this matter. The questions involved are that (1) the warden of the state penitentiary could not take away all of petitioner's good time when he was returned to the penitentiary after his escape from prison; and (2) petitioner has not been given proper credit for his good behavior time while serving his sentence.

G. S. 1949, 76-2421 in substance provides that the warden shall cause a record to be kept of each convict's infractions of rules, which record is to be submitted monthly to the penal board. If no infraction is shown, such convict shall be entitled to a deduction of three days per month during the first year, or fraction thereof, for each month; to a deduction of six days per month during the second year; and after two years to a deduction of eight days per month until expiration of his sentence. If the convict is entitled to deductions and later violates the rules, then the board has the power to

deprive him of such deductions. The board shall direct the convict to be discharged when he has served out his sentence less deductions.

An additional statute, G. S. 1949, 76-2451, provides that the penal board may grant additional good time for meritorious services, working at hazardous tasks, working extra time or giving valuable information to prison officials. This additional good time shall not reduce minimum or maximum sentences to less than two thirds of the time fixed by statute, or the sentence of the court, and shall be in addition to other good time allowances.

At the outset it should be noted that petitioner did not inform this court of all the facts and circumstances surrounding his violations of various laws and the numbers thereof, and that respondent has filled in these omissions. We realize that petitioner is not an attorney, and we will give him any and all benefits to which he is entitled regardless of whether he or respondent supplied us with the necessary information.

The statutes governing good time as earned by a convict in the state penitentiary are definite and clear. Computation of time thereunder was well explained in the case of *In re Kness*, 58 Kan. 705, 50 Pac. 939, and the rule there stated was:

"The good time earned by convicts . . . is computed for and at the end of each calendar month; and when the time of actual service together with the good time earned equals the time of sentence, the convict is entitled to a discharge." (Syl.)

Petitioner complains that he was deprived of good time in violation of statutes, but we cannot find any support for such a contention either under the constitution or the statutes. The penal board has the power to examine and inquire into all matters connected with the government, discipline and police of the penitentiary, and the punishment of the prisoners confined therein. (G. S. 1949, 76-2404.) The warden has power to make and issue such general and special orders and rules not inconsistent with law and the rules of the penal board as he may deem necessary for the government of and the enforcement of discipline in the penitentiary. (G. S. 1949, 76-2410.)

The manner in which petitioner's time has been computed is well set out in the statement of time already quoted herein. This record is attacked by petitioner on what amounts to merely his own conclusions. This court has many times said that such an attack

is not sufficient to entitle a convict to a writ of habeas corpus, which would result in his release from the penitentiary. A petitioner's unsupported and uncorroborated statements are not sufficient to satisfy the burden of proof which is that the prisoner must establish by legal grounds that he is entitled to the writ. This rule has been repeated often in our reports. A few of the many cases are *Pyle v. Hudspeth,* 166 Kan. 62, 199 P. 2d 469; *White v. Hudspeth,* 166 Kan. 63, 199 P. 2d 518; *Weaver v. Hudspeth,* 166 Kan. 66, 199 P. 2d 472; *Miller v. Hudspeth,* 166 Kan. 68, 199 P. 2d 170; *Skelton v. Hudspeth,* 166 Kan. 70, 199 P. 2d 470; *Rice v. Hudspeth,* 166 Kan. 662, 203 P. 2d 169; *Slater v. Hudspeth,* 167 Kan. 111, 204 P. 2d 698; *Hayes v. Hudspeth,* 169 Kan. 248, 217 P. 2d 904; *Engling v. Edmondson,* 175 Kan. 883, 267 P. 2d 487.

In addition to this, the record shows that petitioner has another sentence to serve for the commission of the crime of larceny of an automobile, which sentence must be served after he has completed his sentence for forgery. This circumstance would preclude his being entitled to a writ of habeas corpus at this time. This is a familiar rule of law and is stated in *Craven v. Hudspeth,* 172 Kan. 731, 242 P. 2d 823; *Current v. Hudspeth,* 173 Kan. 694, 250 P. 2d 798.

Petitioner has failed to justify the issuance of a writ of habeas corpus and the writ, therefore, is denied.