375 A.2d 209.

STATE *vs.* GERARD T. OUIMETTE.

JULY 5, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Gerard T. Ouimette is a multiple offender now incarcerated at the Adult Correctional Institutions. He applied to the Superior Court under the Post Conviction Remedy Act to compel the Department of Corrections to deduct from his most recent sentence 370 days of good conduct and industrial credit which the parties agree he earned while serving a prior sentence. The application was denied and Ouimette appealed.

The record discloses that on May 29, 1969, May 28, 1971 and June 4, 1971 applicant was sentenced to serve consecutive terms of 5, 1 and 2 years, respectively. While serving the first of those terms he was convicted of conspiracy to murder and on July 10, 1972 was sentenced to serve an additional term of 10 years to commence upon completion of the three sentences previously imposed. Then, on November 14, 1972, acting under authority of Super. R. Crim. P. 35[1] and in response to applicant's motion to reduce, the sentencing justice converted that sentence to a 10-year concurrent term, effective retroactively to July 10, 1972, the date of the original sentencing. That action was taken in order to make available to applicant educational and parole opportunities that

---

[1]Super. R. Crim. P. 35 empowers the Superior Court at any time within 120 days after sentencing to exercise leniency in the event it determines that the sentence imposed is unduly severe, or that a shorter sentence is desirable. Super. R. Crim. P. 35, Reporter's Notes.

would have been denied him had he continued to serve a 10-year consecutive sentence.

At issue is the validity of applicant's claim to a reduction from his 10-year concurrent sentence as a reward for his good conduct and for engaging in institutional industries. Entitlement to those credits is governed by G.L. 1956 (1969 Reenactment) §13-2-44, which was in effect at the time of the imposition of the pertinent sentences and which, though since amended, is still controlling. *Opinion to the Governor*, 91 R.I. 187, 162 A.2d 814 (1960). It provides that a prisoner sentenced to imprisonment for 6 months or more is entitled to a monthly good conduct deduction of as many days, not in excess of 10, as there are years in the term or terms of his sentence and, regardless of the length of the sentence, to a deduction of 2 additional days per month for engaging in institutional industries. And, finally, that statute, as amended shortly after this court's decision in *Rondoni* v. *Sherman*, 90 R.I. 322, 158 A.2d 267 (1960), negates the holding in that case and provides that "for purposes of computing the number of days to be deducted for good behavior, *consecutive* sentences shall be counted as a whole sentence * * *." (Emphasis added.)

While the number of credit days applicant could earn each month were thus clearly prescribed in the statute, the method of computation was not. *Grieco* v. *Langlois*, 103 R.I. 645, 649-50, 240 A.2d 595, 597 (1968).[2] Nonethe-

---

[2]In *Grieco* v. *Langlois*, 103 R. I. 645, 649-50, 240 A.2d 595, 597 (1968), we noted that one possible construction of G. L. 1956, §13-2-44, as amended by P. L. 1960, ch. 112, §1, "credits a prisoner in advance with the total number of days of good conduct and industrial time that he could possibly earn at the applicable rate spread over the entire length of his term," and that an alternate construction is "that credits are extended monthly or yearly as the case may be, instead of in advance, and under this method a prisoner will not be entitled to his release until the point is reached when the actual days he has served plus the total credit

less, both the Department of Corrections and applicant agree,[3]—though we do not necessarily concur—that 370 days were earned in combined good conduct and industrial credits for the period between May 29, 1969 when applicant began serving the first of his three consecutive sentences and July 10, 1972, when his 10-year concurrent sentence took effect.[4] They disagree, however, on whether those same credits are available to reduce the time applicant is required to serve on the 10-year concurrent sentence subsequently imposed.

That sentence, applicant contends, is neither "fully concurrent" nor "traditionally consecutive," but is instead a "hybrid"[5] to which §13-2-44's aggregating rule applies,

days for the months he has actually served equal the number of days of his sentence." *Id.* at 650, 240 A.2d at 597 (citations omitted). Although we left open which of these two constructions should prevail, we unequivocally held that under the statute a recommendation by one state official and the consent of another were prerequisites to the reduction of the term of a sentence through the extension of good time credits. *Id.* at 653, 240 A.2d at 599. It does not appear that either that recommendation or that consent was forthcoming in this case, but the prosecution has not opted to raise the issue and we shall not do so sua sponte.

[3]At the post conviction remedy hearing the Superior Court justice indicated that in his opinion the method of computation used by the Department of Corrections and the applicant to arrive at a figure of 370 days was erroneous but that since the method was not challenged, the issue was not properly before the court.

[4]The applicant computes his credit in the following manner: He was serving aggregated sentences of 8 years (5+2+1) on July 10, 1972, the effective date of the commencement of the 10-year concurrent sentence, and was therefore entitled on that day to have deducted from his terms 8 days per month for good conduct and 2 days per month for engaging in institutional industries. This total of 10 days per month for the 37 months he had served between May 29, 1969 and July 10, 1972 produced the 370 credit days he claims.

[5]The applicant argues that because a portion of the 5-year sentence had already been served, the 10-year sentence could not be fully concurrent with it, nor were the two consecutive in a traditional sense because the 5-year sentence had not been fully served before he commenced serving the 10-year sentence.

thereby entitling him to have these 370 credit days used to reduce that term,[6] though those credits were earned prior to the imposition of the 10-year concurrent sentence and for a separate offense. Otherwise, he argues, those previously accumulated 370 credit days, although technically applied to reduce his 8-year aggregated term, will have no effect whatsoever on his ultimate release date as extended by the 10-year sentence; therefore, those credits will not be available to him in a meaningful way.

The validity of his aggregation proposal hinges, not on the practical effect of the manner of computing credits, but on how we construe the §13-2-44 directive "that for purposes of computing the number of days to be deducted for good behaviour, *consecutive* sentences shall be counted as a whole sentence * * *." (Emphasis added.) While that question is one of first impression for us, the word "consecutive" appears in the same context in the federal good time statute, §18 U.S.C. §4161, and was interpreted in *Bostick* v. *United States*, 400 F.2d 449 (5th Cir. 1968), *cert. denied*, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 712 (1969). There, on comparable facts the court said that "[t]his specific statutory reference to aggregation of *consecutive* sentences and the omission of any reference to *concurrent* sentences leads us to conclude that the concurrent sentences are not aggregated in determining the basis for computing the good-time credit." *Id.* at 453;

---

[6]The applicant arrives at the terminal date of his incarceration in the following manner: At the commencement of his 10-year sentence he was already entitled to 370 credit days, and he became entitled to 12 additional credit days (10 days good conduct and 2 days industrial) for each month of that term for a total of 1,440 days. The 1,810 (1,440+370) credit days thus ascertained are then deducted from the 3,650 days of his 10-year sentence, thereby reducing his total incarceration time to 1,840 days. Carrying the arithmetic one step further would produce a release date of July 25, 1977, and that date would be further advanced by credits for blood donations thereby entitling him to immediate release.

*accord, United States* v. *Hardin*, 446 F.2d 148 (5th Cir. 1971).

In short, §13-2-44 provides aggregation for good time purposes only in the case of "consecutive sentences." It makes no provision for aggregating that would permit applicant to fuse that portion of his first sentence already served and his most recent concurrent sentence of 10 years. Moreover, nothing that the sentencing justice said either when he amended the 10-year sentence or later when he rejected applicant's request to clarify that sentence in any way supports that latter's contention in this litigation.

Although we agree that not to aggregate the 10-year sentence, either in the instant situation or in the more egregious ones that applicant has hypothesized, will mean that previously earned credits will have no effect on the length of incarceration, we see no real distinction between applicant's situation and that of the defendant in *State* v. *Carsetti*, 117 R.I. 670, 370 A.2d 238 (1977).[7] The applicant in this case cannot draw on a penal checking account balance of 370 days of previously earned good time and industrial credits in order to make a down payment against a future unrelated sentence for a crime not yet perpetrated. Consequently, we conclude that these 370 days cannot be credited against a 10-year concurrent sentence which was not even in existence during the period the good time was earned. *Godwin* v. *Looney*, 250 F.2d 72

---

[7] In *State* v. *Carsetti*, 117 R. I. 670, 671, 370 A.2d 238, 239 (1977), we said that we were "not prepared to hold that either the Constitution or the enlightened administration of justice requires that one who has served time on an invalid conviction thereby establishes a line of credit available for application against a valid sentence subsequently imposed for an unrelated offense."

(10th Cir. 1957);[8] *see Fitzgerald* v. *Sanford,* 145 F.2d 228 (5th Cir.), *cert. dismissed,* 323 U.S. 806, 65 S.Ct. 311, 89 L.Ed. 643 (1944).

The applicant further asserts that to deny him the 370 days of earned credit deprives him of rights guaranteed by both the Federal and State Constitutions. That contention was not raised on the record in the Superior Court and is therefore not before us on this appeal. *American Textile Co.* v. *DeAngelo,* 83 R.I. 234, 238, 115 A.2d 349, 351 (1955); *Gradilone* v. *Superior Court,* 79 R.I. 256, 259, 87 A.2d 497, 498 (1952).

The applicant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

Mr. Chief Justice Bevilacqua did not participate.

*Julius C. Michaelson,* Attorney General, *Nancy Marks Rahmes,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Peter Di Biase,* Asst. Public Defender, for defendant.

---

[8] In *Godwin* v. *Looney,* 250 F.2d 72 (10th Cir. 1957), the defendant was sentenced in 1953 to the Arkansas State Penitentiary for consecutive terms aggregating 16 years, and on June 22, 1954, to a term of 5 years in the federal penitentiary for another crime; the latter sentence to run concurrently with the former. When the defendant was released from the state prison in 1956, he was immediately taken into the custody of the federal authorities. On those facts the court held that although the defendant may have been entitled to credits for time served in the Arkansas prison subsequent to the date of the imposition of the federal sentence, it also held that "[c]learly, he was not entitled to credit for the [first] period he served in the Arkansas State Penitentiary [prior to the day of the imposition of the federal sentence]." *Id.* at 73-74. That latter sentence, the court said, could not run concurrently with the period of imprisonment the defendant had served prior to its imposition.