Byron BARBER

v.

George A. VOSE, Jr.

No. 95–18–MP.

Supreme Court of Rhode Island.

Aug. 20, 1996.

Byron Barber, Pro Se, and Paula Lynch Hardiman, Asst. Public Defender, for Plaintiff.

Stephen A. Regine and David J. Gentile, Asst. Attys. General, for Defendant.

## OPINION

BOURCIER, Justice.

This is an appeal from a final judgment of the Superior Court denying Byron Barber's petition for habeas corpus.

The petitioner, Byron Barber (Barber), is presently confined at the Adult Correctional Institutions (ACI). On June 10, 1986, following his conviction by a jury in the Superior Court on an indictment charging him with first degree sexual assault, he was sentenced to a term of twenty-five years, twenty of which was to be served in prison and the five year remainder suspended, with probation. That conviction was affirmed by this Supreme Court on March 23, 1988. *State v. Barber,* 539 A.2d 76 (R.I.1988).

Barber, in his petition for habeas corpus, claims that he is presently being illegally detained at the ACI. A Superior Court justice denied his petition. We affirm. In doing so, we specifically note as significant the hearing justice's findings of fact designated as Nos. 22, 23, 26, 28, 35 and 36. Her findings in Nos. 22 and 23 were that institutional industries sentence reduction credits were being awarded by the department of correction's supervisor of records and identification in violation of G.L.1956 § 42–56–24(c). In finding No. 35, she concluded that the present method of crediting inmate good behavior sentence credits by the department of corrections was not in compliance with the specific recommendation and consent requirements of § 42–56–24(a). In findings No. 26 and No. 28, the trial justice, in considering whether Barber's good behavior and institutional industries sentence credit time had been properly calculated, apparently used what she referred to as the "pre–1976 formula." In doing so, she apparently overlooked our *Opinion to the Governor,* 91 R.I. 187, 162 A.2d 814 (1960), wherein we advised the Governor that the law in effect at the time of an inmate's sentencing regarding good-behavior credits is the law that governs throughout his or her serving of that sentence. In Barber's case, he was sentenced

on June 10, 1986, and the law in effect at that time was § 42–56–24, as last amended by P.L.1976, ch. 290, and not pre–1976 law. The trial justice's concern regarding Barber's alleged equal protection claim arising from his request for pre–1976 law treatment need not be addressed by us because that question has long since been determined contrary to his contention in *Mastracchio v. Superior Court*, 98 R.I. 111, 200 A.2d 10 (1964), and *Sousa v. Langlois*, 97 R.I. 196, 196 A.2d 838 (1964).

## I

### Denial of the Writ

▋ The hearing justice in the Superior Court found that Barber's sentence to the ACI, however calculated, had not yet expired. Accordingly, she correctly determined that Barber was not being illegally detained and was not entitled to immediate release and denied his application. The writ of habeas corpus has never been recognized to permit the release of a prisoner being held in lawful confinement by virtue of a valid conviction and sentence. *Ouimette v. Langlois*, 97 R.I. 210, 211, 196 A.2d 828, 828 (1964); *Fleury v. Langlois*, 94 R.I. 412, 414, 181 A.2d 244, 246 (1962); *Lee v. Kindelan*, 80 R.I. 212, 223, 95 A.2d 51, 56 (1953); *Asadoorian for Writ of Habeas Corpus*, 48 R.I. 50, 54, 135 A. 322, 324 (1926). *See also* 39 Am.Jur.2d *Habeas Corpus* § 1 (1968).

## II

### Computation of Inmate Good Behavior Credits

Barber, in his application for the writ of habeas corpus, premised his request therefor upon his contention that by virtue of his good behavior and institutional industries time credits his prison sentence service time had expired. He asserts that G.L.1956 § 42–56–24 guaranteed him so-called up-front good time credits that were to be awarded to him immediately upon his initial entry to the ACI thereby reducing instantly his original term of sentence confinement.

Section 42–56–24 reads as follows:

"Time allowed for good behavior.—(a) The director or his or her designee shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of . the director of the department of corrections or his or her designee, upon recommendation to him or her by the assistant director of institutions/operations, be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence; provided that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one month's good behavior; and provided, further, that in the case of sentences of at least six (6) months and less than one year, one day per month shall be so deducted;

(b) For purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence;

(c) For every day a prisoner shall be shut up or otherwise disciplined for bad conduct, as determined by the assistant director, institutions/operations subject to the authority of the director, there shall be deducted one day from the time he or she shall have gained for good conduct;

(d) The assistant director, or his or her designee subject to the authority of the director, shall have the power to restore lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform; and

(e) For each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life who has faithfully engaged in institutional industries there shall, with the consent of the director, upon the recommendations to him or her by the assistant director, institutions/operations, be deducted from the term or terms of the prisoner an additional

two (2) days a month. These two (2) days a month shall be deducted regardless of the length of the sentence of the prisoner."

Barber, in his application for habeas corpus, outlines his up-front good behavior and institutional industries sentence credit time contention as follows:

"The applicable rate of calculating Barber's good time is, Barber is entitled to receive (12) days per month for each one of his (240) in the term of his (20) year sentence. The applicable method of applying good time on an (2) year sentence (i.e., (12) days per month), and spread it over the *entire length* of Barber's term, causing his sentence to expire after he has served a total of (12) years (1) month and (10) days.

"Barber is entitled to have 2,880 days good time deducted from the *term* of his (20) years, meaning, deduct 2,880 days from his 7,300 day term of sentence, meaning (20) years. 2,880 days to be deducted from the *term* of sentence amounts to (7) years (10) months and (20) days, leaving a remainder to be served, (12) years (1) month and (20) days." (Emphasis added.)

The apparent and obvious fault with that contention, in light of the particular statutory language of § 42–56–24, is that a convicted defendant, upon his arrival at the prison, and before serving one day of his or her sentence, would be awarded good prison behavior time credits as well as institutional industries work time credits before that prisoner had exhibited any good behavior or worked in any prison industry. In Barber's case, those credits would total 2,880 days of future good behavior and institutional industries work. That figure would include good prison time credits for over seven years during which he would not actually be in the prison. In addition, his 2,880 days of granted sentence reduction credits would be given *without* the prior required statutory recommendation of the assistant director of the department of corrections and the required consent of the director of that department.

■ An examination of § 42–56–24(a) shows that it provides for the allowance of sentence credits to be awarded to prison inmates who faithfully observe "all the rules and requirements of the institutions" and who have not been "subjected to discipline." That statute is similar to others in some of our sister states that are said to be intended not only to encourage rehabilitative efforts on the part of inmates "by encouraging the industrious and orderly, but also to aid prison discipline by rewarding the obedient." *Woodring v. Whyte*, 161 W.Va. 262, 275, 242 S.E.2d 238, 246 (1978).

The controversy in the litigation before us appears to concern not what the good behavior time statute says and requires, but instead, the manner in which it is being implemented. Barber, in his application, asserts one method of implementation, and the supervisor of records and identification at the ACI, while essentially agreeing with Barber's implementation method, arrives at a different computation of the number for good behavior and institutional industries credits. We revisit the hearing justice's findings of fact Nos. 22, 23, and 35.

■ It appears fundamental that Barber's right to good behavior and institutional industries credits is purely statutory and "may be acquired only in the manner and under the circumstances pointed out by statute." *Burns v. Page*, 446 P.2d 622, 623 (Okla.Crim.App.1968) (citing 72 C.J.S. *Prisons* § 21). *See also State v. Barnard*, 126 Ariz. 110, 612 P.2d 1073 (1980); 60 Am. Jur.2d *Penal and Correctional Institutions*, § 222 (1987). In *Douglas v. Sigler*, 386 F.2d 684 (8th Cir.1967), the court there pointed out:

"The allowance of good time to a prisoner and its denial or forfeiture are strictly matters of statute and are, of course, dependent upon the provisions of the particular statute under consideration. As a general rule the right to a good-time allowance is contingent until the time arises that its allowance will end imprisonment; the grant or denial of such an allowance is discretionary with the executive officer charged with the administration of its provisions; and its allowance is a matter of grace rather than a right. See Anno. 95 A.L.R.2d 1267 (1964).

"In *Pagliaro v. Cox*, 143 F.2d 900 (8 Cir. 1944), this Court concisely stated the controlling principle at p. 901:

"'The allowance of good time, until earned for the entire term (*Estabrook v. King*, Warden 8 Cir., 119 F.2d 607, 609; *Douglas v. King*, 8 Cir., 110 F.2d 911, 913, 127 A.L.R. 1200; *United States v. Nicholson*, 4 Cir., 78 F.2d 468, 470, *certiorari denied* 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405), is a privilege which is conditioned expressly by the statute, sec. 710, Title 18 U.S.C.A., allowing it upon a record of conduct showing "that he has faithfully observed all the rules and has not been subjected to punishment." *See Wipf v. King*, 8 Cir., 131 F.2d 33, 34.'" *Douglas*, 386 F.2d at 686.

We also address Barber's contention at this time that he has a constitutionally vested and protected property right guaranteeing him immediate up-front good behavior and institutional industries credit deductions from his total prison term sentence. He bases his contention upon *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). He misinterprets *Wolff*. Our good-behavior or good-time sentence credit statute § 45–56–24 is *discretionary* in its application. It is dependent upon an inmate's monthly compliance with and obedience to prison rules and regulations as well as the further affirmative discretionary action on the part of two different department of corrections officers.

Under our good behavior time credit statute, the assistant director of institutional operations in the department of corrections and the director of the department of corrections are vested with *discretion* in granting or refusing to grant good-behavior and institutional industries credit time to an inmate. *Wolff* procedures are only required when the statute in question is mandatory or specifically limits the discretion of prison department authorities. Because the department of corrections officials designated in § 42–56–24 are vested with discretion in granting or refusing to grant good-behavior and institutional industries time credits, depending upon the inmate's monthly record of conduct, the predicate for Barber's invocation of the Fourteenth Amendment protection as construed and applied in *Wolff* is totally nonexistent. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451, *reh'g denied* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Jackson v. Hogan*, 388 Mass. 376, 446 N.E.2d 692 (1983) (prison inmate has no vested constitutional right to good-time deductions).

Accordingly, we turn to the statute and determine therefrom what good behavior and institutional credits Barber was in fact entitled to, pursuant to the terms of the statute. We do so because we deem it necessary at this time to construe § 42–56–24. We do so in part motivated by what we are told by the department of correction's counsel, namely, that there is now pending in the Superior Court in excess of 100 petitions and applications similar to that presented by Barber, all of which question the department of corrections' implementation of the good behavior time statute. We do so also because we deem it expedient at this time to provide guidance to those charged with the responsibility of implementing § 42–56–24 and to the state's institutional inmates who rely upon that statute.

We shall address § 42–56–24 both from its legislative origins and from our past judicial precedents concerning that statute. We note that in none of those past judicial precedents did we ever squarely construe the statute in question, although we did leave therein some indications of what we then believed the statute both provided and required. Those indications will be noted in the course of this opinion.

## III

### Legislative History of G.L.1956 § 42–56–24

■ General Laws 1956 § 42–56–24 provides for the allowance of sentence credits to be given to prison inmates as incentive rewards for their good behavior while serving their prison sentences.[1] That statute reads

---

1. That good behavior is expected in any event. In *State v. Upham*, 439 A.2d 912, 914 (R.I.1982), we said that "we expect nothing less than good

and provides today, essentially as it did when first reported in 1872, some one hundred and twenty-four years ago. A genogram of the statute through those years reveals clearly not only its intention but in addition, a common prerequisite procedural format intended and required by the General Assembly before any inmate may be awarded good behavior credit time reduction from his or her prison sentence. At no time since 1872 has the statute ever provided for automatic allowance of good behavior credits or by so-called up-front allowance of good behavior sentence credit reduction. In fact, a contrary intention was clearly expressed in the 1872 version of the statute and in each and every legislative amendment to the statute enacted thereafter.

In 1872, the statute G.S. 1872, title 32, ch. 242, § 31, required the warden of the state prison to keep a record of the conduct of each prisoner entrusted to his custody. It also permitted the warden to reward a prisoner's good behavior while confined with sentence-time credits for that good behavior to be deducted from the prisoner's total sentence. The warden, however, could not under any circumstances grant or award any good behavior time unless that grant or award was first recommended to him by a majority of the board of inspectors and with the consent of the Governor. The same prerequisite recommendation and consent of the Governor format was carried into G.L. 1896, title 32, ch. 291, § 28. In 1909, and continuing thereafter until 1956, the warden could only grant good behavior credit time to a prisoner upon the prior recommendation of the chief of the division of jails and reformatories and with the consent of the Governor.[2]

■ Public Laws 1956, ch. 3721, § 28 recognized the fact that the Administration Act of 1939, P.L.1939, ch. 660, § 80, had placed the various state detention facilities under the control and supervision of the department of social welfare, and in P.L.1956, ch. 3721, §§ 1 and 28, redesignated the named officials who had first to recommend and consent to the warden's good behavior time sentence reduction for any prisoner. Those newly designated officials were the assistant director of the department of social welfare and the director of that department. The assistant director's recommendation was required along with the director's consent until May 3, 1972, when the General Assembly created a state department of correctional services. P.L.1972, ch. 163. In that legislation the General Assembly also amended G.L.1956 § 13-2-44 and changed the procedure necessary for permitting the warden to award good behavior time credit to an inmate. The new prerequisite authorization process then only required the consent of the director of the department of corrections. However, in 1976, the General Assembly again amended the good behavior credit statute and removed the prison inmate conduct record-keeping duty from the warden and placed it with the assistant director of adult services. In addition, the General Assembly restored the two-tier procedural requirement necessary to authorize any award of good behavior time credits. By virtue of the 1976 legislation, any good time sentence reduction could only be awarded after a recommendation to do so by the assistant director of adult services and the consent of the director of the department of corrections. Public Laws 1976, ch. 290, amending § 42–56–24.[3]

Fifteen years later, in 1991, § 42–56–24 was again amended, this time by an act reorganizing the department of corrections. It returned the prison inmate conduct record-keeping obligation to the director of the department of corrections, or his or her designee, and permitted the director or his or her designee to award good behavior time credits only upon the prior recommendation to him or her to do so by the assistant

behavior as a minimum from inmates of our correctional institutions."

2. General Laws 1909, title 38, ch. 360; G.L. 1923, ch. 413, art. 5, § 18; G.L.1938, ch. 55, § 18; P.L.1951, ch. 2746, § 18; P.L.1955, ch. 3549, § 18.

3. Barber's good behavior and institutional industries credits are to be determined in accordance with the provisions of the 1976 legislation, in effect at the time of his sentence. *Mastracchio v. Superior Court*, 98 R.I. 111, 200 A.2d 10 (1964); *Opinion to the Governor*, 91 R.I. 187, 162 A.2d 814 (1960).

director of "institutions/operations" and the final consent of the director. P.L.1991, ch. 183, § 2.

Our purpose in delving into the long legislative history of § 42–56–24 has been to determine therefrom the existence, if any, of any possible legislative support for the present department of corrections policy which apparently bypasses the required recommendation and consent features in the statute when awarding so-called up-front credit for inmate good behavior time. We note the existence of that policy from the testimony of Frederick Haibon (Haibon), the supervisor of records and identification at the ACI, given at the remand hearing. We have found no such support in the legislative history of § 42–56–24 that permits bypassing of the required recommendation and consent features by the department of corrections.

We note also from our review of the few statutes similar to ours in other jurisdictions that the immediate up-front awarding of prison good behavior time without explicit statutory direction has not been permitted. *Rabon v. State ex rel. Eyman,* 18 Ariz.App. 523, 504 P.2d 54 (1972); *May v. Hoffman,* 179 Kan. 149, 293 P.2d 265 (1956); *Venman v. Patrissi,* 156 Vt. 257, 590 A.2d 897 (1991); *Woodring v. Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978); *State ex rel. Parker v. Sullivan,* 184 Wis.2d 668, 517 N.W.2d 449 (1994).

█ The rationale apparent in all the above cases is that so-called good time credit for good behavior while incarcerated is not a constitutional guarantee, *Wolff v. McDonnell,* 418 U.S. at 557, 94 S.Ct. at 2975, 41 L.Ed.2d at 951; *Tuitt v. Fair,* 822 F.2d 166, 180 (1st Cir.1987), but is instead an act of grace created by state legislation that may provide therein for the manner in which good time credits may be granted for compliance with, or revoked for violations of, prison rules and regulations. The appropriate statutory procedural process for the granting or the revocation of good time credits must, however, in all instances be strictly complied with and cannot be circumvented.

█ The hearing justice's findings of fact Nos. 22, 23, and 35 are totally supported

by the complete absence of any evidence showing that any of Barber's good behavior institutional industries time credits had ever been recommended and consented to as specifically required in § 42–56–24. Haibon's testimony, given at the remand hearing, reveals no mention of, or compliance whatsoever with, the recommendation and consent prerequisites in § 42–56–24. It appears that Haibon has been awarding instant up-front time on the basis of correspondence to him from the senior legal counsel of the department of corrections as noted from senior legal counsel's January 31, 1994 letter to Justice Gemma in the Superior Court regarding the statute in question. It is readily apparent that counsel's letter totally misconceives the function and duties of the director of corrections regarding his role in the crediting of good behavior time credits pursuant to § 42–56–24 and misconceives our opinion in *State v. Ouimette,* 118 R.I. 525, 375 A.2d 209 (1977). His reliance upon *Ouimette's* footnote number two reference to our previous opinion in *Grieco v. Langlois,* 103 R.I. 645, 240 A.2d 595 (1968), completely overlooks our statement therein that § 42–56–24 unequivocally required "a recommendation by one state official and the consent of another" and constituted "prerequisites to the reduction of the term of a sentence through the extension of good time credits." *Ouimette,* 118 R.I. at 527–28 n. 2, 375 A.2d at 210 n. 2. The sentence reduction program initiated by Haibon completely sidesteps those statutory requirements. What is perplexing is the fact that previously, on March 16, 1994, Haibon, in an interoffice memo to A.T. Wall, the assistant director of administration in the department of corrections, wrote that he then believed that "good time is to be earned monthly rather than advanced up front, and the inmate is to have good time credited at the end of each month based on his conduct during the month." We agree that the statute so requires. Unfortunately, however, Haibon then continued in his memo to write that "the *Warden* of each facility should on a monthly basis, review each inmate in their perspective [*sic*] facilities and either recommend or deny good time credits for that particular month. This recommendation or denial is also considered for the time that is

cited in the statute." Haibon misreads § 42–56–24. The statute does not authorize the "Warden" to approve or disprove any good behavior sentence credits. The warden's authority to do so was repealed by the General Assembly in 1956, P.L.1956, ch. 3721, §§ 1, 28. The present and relevant statute since then permits *only* the director or his or her designee to do so. With regard to institutional industries credits, the statute permits credits only "with the consent of the director, upon recommendations to him or her by the assistant director institution/operations."

## IV

### Section 42–56–24, Judicial Precedents

This Court had its first opportunity to examine the good behavior time credit statute in 1953. In *Lee v. Kindelan*, 80 R.I. 212, 95 A.2d 51 (1953), this Court there considered an inmate's application for habeas corpus that had raised therein essentially the same contention advanced in the instant case by Barber. Lee, as does Barber, asserted that upon his being sentenced to a term of twenty years, that upon his arrival at the state prison, he was then entitled to be immediately and automatically credited with twenty years of good behavior credits under the good behavior statute, thereby reducing his sentence to be served to sixteen years and eight months. Lee then contended that having served that length of sentence, he was entitled to immediate release from prison. This Supreme Court rejected that contention outright. We said:

> "General Laws 1938, chap. 55, § 18 * * * does not authorize an automatic reduction in the time to be served under a sentence, as petitioner contends. It expressly makes the permitted reduction subject to certain conditions as therein expressed, namely, the necessity for a particular record of good behavior, the recommendation of the chief of the division of jails and reformatories and of the director of social welfare and the *consent of the governor*." [4] 80 R.I. at 222, 95 A.2d at 55.

The Court in *Lee* thereafter noted, as we do now from the record before us in this case,

that there is a complete absence of any evidence showing that the required monthly recommendations by the assistant director of institutions/operations for Barber's monthly good behavior institutional industries credits were ever made or the required consents thereto by the director of the department of corrections were ever given.

Some fifteen years later, in *Grieco*, this Court once again had occasion to consider § 42–56–24. In *Grieco*, the petitioner asserted the same immediate up-front formula as advanced by Lee and, as here, by Barber. *Grieco*, 103 R.I. at 648 & n. 5, 240 A.2d at 596 & n. 5. The Court in *Grieco* declined to answer the question presented regarding the manner of calculating an inmate's good behavior credits, but did specifically note, as it did in *Lee*, that "good conduct and industrial time credits shall be deducted only * * * 'with the consent of the assistant director of the department of social welfare in charge of correctional services, upon recommendation to him by the warden.'" *Grieco*, 103 R.I. at 650, 240 A.2d at 597. This Court in *Grieco* specifically reaffirmed *Lee*, stating in doing so, that

> "we construed the statute as not authorizing ' * * * an automatic reduction in the time to be served under a sentence * * * ' and as expressly making ' * * * the permitted reduction subject to certain conditions as therein expressed, namely, the necessity for a particular record of good behavior, the recommendation of the chief of the division of jails and reformatories and of the director of social welfare, and the *consent of the governor*.'" *Grieco*, 103 R.I. at 652, 240 A.2d at 598.

We observed in *Grieco* that since the *Lee* opinion in 1953, the General Assembly had on several occasions amended § 42–56–24 but never to the extent of, or for the purpose of, alleviating or deleting the mandatory recommendation and consent requirements necessary in order for an inmate to receive good behavior time credits. In *Grieco*, we interpreted that legislative inaction as evidencing clear legislative approval of the interpretation we had previously given to § 42–56–24 in *Lee*, and a legislative intention to retain

---

4. As previously noted, the consent of the Governor requirement was eliminated in 1956.

the mandatory recommendation and consent requirements in the statute.

We then said, in denying Grieco's request for automatic up-front good time allowance:

"We follow therefore the construction given in *Lee v. Kindelan, supra*, to the good conduct statute, and we hold that the absence of the prerequisite recommendation by one state official and the prescribed consent of another made it impossible for good time credits to be extended to petitioner and for the term of his sentence to be thereby reduced." *Grieco,* 103 R.I. at 653, 240 A.2d at 599.

In 1977, this Court again had occasion to revisit § 42–56–24 (then designated § 13–2–44) in *State v. Ouimette,* 118 R.I. 525, 375 A.2d 209 (1977). In that case, involving a postconviction proceeding, Ouimette sought to compel deduction of 370 days of good behavior credits from his previously imposed consecutive sentences. This Court, in the course of its opinion denying Ouimette relief, reiterated what had been said in *Grieco,* namely, that the method of calculating good behavior time credits had been left undecided, but did say in footnote No. 2:

"In *Grieco v. Langlois,* 103 R.I. 645, 649–50, 240 A.2d 595, 597 (1968), we noted that one possible construction of G.L.1956, § 13–2–44, as amended by P.L.1960, ch. 112, § 1, 'credits a prisoner in advance with the total number of days of good conduct and industrial time that he could possibly earn at the applicable rate spread over the entire length of his term,' and that an alternate construction is 'that credits are extended monthly or yearly as the case may be, instead of in advance, and under this method a prisoner will not be entitled to his release until the point is reached when the actual days he has served plus the total credit days for the months he has actually served equal the number of days of his sentence.' *Id.* at

650, 240 A.2d at 597 (citations omitted). Although we left open which of these two constructions should prevail, we unequivocally held that under the statute a recommendation by one state official and the consent of another were prerequisites to the reduction of the term of a sentence through the extension of good time credits. *Id.* at 653, 240 A.2d at 599. It does not appear that either that recommendation or that consent was forthcoming in this case, but the prosecution has not opted to raise the issue and we shall not do so sua sponte." *Ouimette,* 118 R.I. at 527–28 n. 2, 375 A.2d at 210 n. 2.

That footnote unfortunately has spawned the confusion expressed in Barber's habeas corpus petition before us and the consequent and subsequent filing of numerous other such similar petitions by other inmates claiming to be entitled to the immediate and automatic "up front" awarding of good behavior time credit for the entire term of their prison sentences.[5]

We deem it appropriate at this time to address squarely the issue of how under the prevailing statute good behavior time must be credited. We do so in light of what we held in *Lee, id.,* and in light of what the General Assembly has said and not said regarding § 42–56–24 since *Lee* and *Grieco* were decided.[6]

First, in *Lee,* we specifically held that § 42–56–24 did not authorize an immediate up-front award of good behavior time credits calculated from an inmate's total confinement sentence.

Next, in *Lee,* we specifically noted that good behavior time credit could only be awarded on the existence of a record of good behavior and upon the recommendation and consent of the appropriate officials designated in § 42–56–24. In *Grieco* we acknowledged both the implied legislative approval

**5.** We acknowledge that footnote No. 2 in *State v. Ouimette,* 118 R.I. 525, 375 A.2d 209 (1977) has served to create some confusion in regard to the manner of implementation of § 42–56–24. Since it originated in a footnote, it is only fitting that its demise should be in like form. It is no longer pertinent in determining the proper implementation of § 42–56–24 because we have now under-

taken to address the statute's construction, meaning, and manner of implementation.

**6.** Since *Lee v. Kindelan,* 80 R.I. 212, 95 A.2d 51 (1953), the General Assembly has on at least three occasions considered and amended § 42–56–24. It did so in P.L.1972, ch. 163, § 1, P.L. 1976, ch. 290, § 1 and P.L.1991, ch. 183, § 2.

and the continued judicial approval of *Lee* and said, in doing so:

"Since our decision in the *Lee* case, the good conduct statute there considered has several times been amended, and in each instance the legislature reenacted the substance of the stipulation which we there construed. In these circumstances we deem the inclusion of a substantially identical provision in an amendatory enactment as evidencing a legislative intention to adopt in the later version the construction which the court previously placed upon the language of the earlier. *In re O'Connor,* 21 R.I. 465, 44 A. 591; *Kent v. Atlantic DeLaine Co.,* 8 R.I. 305.

"We follow therefore the construction given in *Lee v. Kindelan, supra,* to the good conduct statute, and we hold that the absence of the prerequisite recommendation by one state official and the prescribed consent of another made it impossible for good time credits to be extended to petitioner and for the term of his sentence to be thereby reduced. The parole board, therefore, had no warrant to inscribe the expiration date of September 22, 1966 on petitioner's parole permit." *Grieco,* 103 R.I. at 652–53, 240 A.2d at 598–99.

Accordingly, we construe § 42–56–24 as clearly requiring that before Barber can claim to be entitled to any good behavior or institutional industries sentence credit time, he must first show (1) that for each of the months during which he was confined at the ACI, he exhibited the required good behavior and performed the necessary work in an appropriate institutional industry, (2) the recommendation to the director of the department of corrections by the assistant director of institutional/operations that Barber should be awarded the monthly good behavior and institutional industries credits, and (3) the consent of the director to the assistant director of institutional/operations recommendation for the credits.

We believe, as do the courts in other jurisdictions having good behavior or good time statutes similar to § 42–56–24, that good behavior or good time credits under our statute do not accrue as a matter of right, but instead, must be earned and can only be given by the required affirmative action of the designated department of correction officials. *See, e.g., State v. Barnard,* 126 Ariz. 110, 612 P.2d 1073 (1980); *In re Smith,* 33 Cal.2d 797, 205 P.2d 662 (1949); *State v. McCall,* 273 N.C. 135, 159 S.E.2d 316 (1968); *Skapura v. McFaul,* 54 Ohio St.2d 348, 376 N.E.2d 1339 (1978); *Sullivan v. State,* 15 Or.App. 149, 515 P.2d 193 (1973).

On the basis of the record before us, there is no evidence showing that *any* good behavior or institutional industries credits have ever been *legally* credited to Barber's twenty-year-confinement sentence in compliance with § 42–56–24. For that reason alone, the hearing justice properly denied Barber's petition for habeas corpus.[7]

Section 42–56–24 is both clear and unambiguous in setting out the procedures by which an inmate may earn sentence credits. That being so, it is not the function of this Court to rewrite the statute by judicial interpretation, nor is it legal for those charged with the responsibility of implementing the statute to subvert its directives by administrative interpretation because they find it inconvenient or difficult to comply with its provisions. *DeAngelis v. Rhode Island Ethics Commission,* 656 A.2d 967, 970 (R.I.1995).

For the reasons hereinabove related, Barber's appeal from the final judgment of the Superior Court denying his petition for habeas corpus is denied and dismissed.

7. Nothing stated herein precludes the director and assistant director from reviewing Barber's institutional record to date and awarding to him such good behavior and institutional industries credits as his monthly conduct record may warrant. In making such an award, the assistant director should recommend and the director should consent, on a monthly basis as mandated by § 42–56–24.