Daniel Curry **CROWLEY**, Larry Noel Sherman, David Steeves Taylor, Appellants,

v.

Robert M. **LANDON**, Director; Gerald M. Baliles, Attorney General, Appellees.

No. 85–6097.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1985.

Decided Dec. 26, 1985.

Michael Morchower (Eric D. White, Morchower & Luxton, Richmond, Va., Richard S. Taylor, Jr., on brief) for appellants.

James E. Kulp, Sr. Asst. Atty. Gen. (William G. Broaddus, Atty. Gen., Jerry P. Slonaker, Sr. Asst. Atty. Gen., Richmond, Va., on brief) for appellees.

Before SPROUSE and SNEEDEN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Daniel Curry Crowley, Larry Noel Sherman and David Steeves Taylor appeal the district court's denial of their habeas corpus petition challenging their reincarceration in a Virginia state penitentiary. 28 U.S.C. § 2254. The Commonwealth of Virginia reincarcerated the petitioners after the Supreme Court of Virginia vacated the orders of the state trial court which had released them. We affirm.

Crowley pled guilty in state court to possession of marijuana with intent to distribute. Sherman and Taylor pled guilty to aiding and abetting in the possession of marijuana with intent to distribute. The state trial court sentenced Crowley to serve a term of twelve years[1] and Sherman and Taylor each to serve ten years. Virginia Supreme Court Rules, 1:1, and Va. Code Section 53–272, (now § 19.2–303 (Cum. Supp.1985)),[2] read together, allow a trial judge to modify a sentence after the expiration of twenty-one days from sentencing until a prisoner is committed to the penitentiary. *In re Department of Corrections,* 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981). Within twenty-one days of being sentenced, Crowley, Sherman and Taylor each filed a motion asking the trial court to set aside, suspend or modify the verdict. The court took the motions under advisement but did not rule on any of the motions before the expiration of twenty-one days from sentencing and the transfer of the three petitioners from the county jail to the state penitentiary. The trial court subsequently

---

1. Crowley was sentenced to twenty years with eight years suspended on the marijuana offense and to a concurrent term of five years following his plea of guilty to a charge of possession of LSD.

2. Rule 1:1 provides, in part:
   All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer....
   Va.Code § 53–272 provided in pertinent part:
   In case the prisoner has been sentenced but not actually committed and delivered to the penitentiary for a felony the court which heard the case, if it appears compatible with the public interest and there are circumstances in mitigation for the offense, may at any time before the prisoner is committed to the penitentiary, suspend or otherwise modify and alter the unserved portion of any such sentence, or may place the defendant on probation under the supervision of the probation officer during good behavior, for such time and under such conditions of probation as the court shall determine.
   This language is similar to § 19.2–303 (Cum. Supp.1985).

ordered them released and suspended the remainder of their sentences.[3] The petitioners were placed on supervised probation.

As a result of widespread publicity surrounding the petitioners' release, the Virginia Attorney General, acting for the Virginia Department of Corrections, petitioned the Supreme Court of Virginia for a writ to prohibit the trial court from ordering the petitioners released. The Virginia Court held that Rule 1:1 and section 53–272 were jurisdictional; therefore, when the twenty-one days following the sentencing order expired, the trial court no longer had the authority to suspend the sentences of prisoners who had been committed to the state penitentiary. *In re Department of Corrections, Id.* at 463, 281 S.E.2d at 862. The court, however, ruled that since the petitioners had already been released, a writ of prohibition was inappropriate. *Id.* at 461–62, 281 S.E.2d at 861. Immediately thereafter, the Department of Corrections filed motions in the state trial court to vacate the release orders on the ground that they were void. The trial court dismissed those motions, but on appeal the Supreme Court of Virginia reversed the trial court and vacated the release orders for lack of jurisdiction. *Virginia Department of Corrections v. Crowley*, 227 Va. 254, 264, 316 S.E.2d 439, 444 (1984). The three petitioners voluntarily surrendered and were reincarcerated in June and July of 1984 to serve the remainder of their sentences.

The petitioners' habeas petition attacks their reincarceration on the grounds that: 1) it deprived them of equal protection under the fourteenth amendment of the United States Constitution; 2) they have a due process right to good time credit towards parole for the time spent on probation;[4] 3) their reincarceration violated the constitutional protection against *ex post facto* laws;

and, 4) their reincarceration subjected them to cruel and unusual punishment.

## I.

■ The petitioners' equal protection argument is that in reincarcerating them after their initial release, the state treated them differently from other prisoners whom trial courts in Virginia had erroneously released under similar circumstances. During the habeas proceedings before the district court, the petitioners introduced a list of twenty-four prisoners who, they contend, had received the benefit of a trial court's interpretation that Rule 1:1 actually authorized suspension or modification of sentences beyond the time frame the Rule prescribed. A number of them were confined in county jails at the time of their release; thus, section 53–272 authorized their release. It is apparent, however, that some prisoners were released under the same interpretation of Rule 1:1 as were the petitioners, and those prisoners were not reincarcerated.

The petitioners contend that by proceeding only against them, the Attorney General violated their equal protection rights under the fourteenth amendment in the same manner as discriminatory selective prosecution violates the rights of prosecuted defendants. We agree that the constitutional principles in selective prosecution cases are relevant to this case involving selective altering of the rights of those already convicted. Applying those principles to the facts of this case, however, we cannot agree that the Commonwealth's reincarceration of the petitioners violated their rights to equal protection. *See Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). In *Wayte*, the Supreme Court reviewed the selective prosecution of young men who had violated the Military Selective Service Act by failing to register with the Selective Service System.

---

3. The court entered the order releasing Crowley approximately one year after he began serving his sentence. Sherman and Taylor had been in the penitentiary approximately three and one-half months and four and one-half months, respectively, when the court entered orders releasing them.

4. Granting of good time credit would require petitioners' immediate release.

Wayte challenged the government's system of prosecuting only those nonregistrants who either had advised the government that they had failed to register or were reported by others as having failed to register. The petitioner alleged that this enforcement system targeted him and other vocal nonregistrants for prosecution on the basis of their exercise of first amendment rights. 105 S.Ct. at 1529.

Noting the broad discretion of prosecutors in selecting cases for prosecution, the Court stated that, nevertheless, a decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification ... including the exercise of protected statutory and constitutional rights." *Id.* at 1531 (citations omitted). To show unconstitutional selective prosecution, a petitioner must demonstrate both that an enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* Rejecting Wayte's claim that the government had prosecuted him and others on the basis of their exercise of first amendment rights, the Court noted that the government had prosecuted people who reported themselves or were reported by others, but who did not publicly protest. Consequently, the prosecution of those nonregistrants who came to the prosecutor's attention by virtue of their own activity did not subject vocal nonregistrants to any special burden and did not have a discriminatory effect. *Id.* at 1532. Further, the Court held that even if the government's action had such an effect, it was not motivated by a discriminatory purpose. *Id.*

Similarly here, even if the state's action had a discriminatory effect—which we do not decide—the petitioners cannot prevail. The petitioners simply have not demonstrated that the Attorney General was motivated by a discriminatory purpose in reincarcerating them even though he did not proceed against several others who had been erroneously released under comparable circumstances. In reviewing the intent in the exercise of prosecutorial discretion,

we note the Court's statement that broad prosecutorial discretion "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Id.* at 1531. The Court indicated that in exercising discretion, prosecutors could consider "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Id.*

We think the Court's reasoning in *Wayte* applies with equal force to our examination of the Virginia Attorney General's decision to seek reincarceration of the petitioners. They had been sentenced for serious narcotics violations and then released by procedures which the Supreme Court of Virginia held to be void. The Attorney General became aware of the petitioners' release as a result of widespread publicity accompanying the trial court's actions. He then initiated the proceedings which eventually led to the petitioners' reincarceration. The petitioners note that the Attorney General was involved in a political campaign in 1981 when he took the actions of which they complain. There is nothing in the record, however, to indicate that he undertook to have the petitioners reincarcerated for any reason other than the seriousness of the crimes involved and the public outcry against their release. We agree with the district court that these considerations are relevant to the deterrent effect of the sentences, and thus encompassed within the nondiscriminatory motives which the *Wayte* Court recognized as properly underlying prosecutorial action. In short, we do not believe that the petitioners' rights to equal protection under the fourteenth amendment have been violated.

## II.

■ Va.Code § 53.1–196 (1982) authorizes good conduct credit of ten days for every twenty days of "confinement in a correctional facility."[5] The Supreme Court

---

5. Va.Code §§ 53.1–198–202 (1982) established a

different "good conduct" framework for persons

of Virginia dismissed the petitioners' state habeas corpus petition seeking credit toward parole for time spent on probation. In view of that court's ruling on this question of state law, it is evident that the petitioners are not entitled to good time credit under state law. Our task in this habeas proceeding, therefore, is limited to determining whether the denial of good time credit deprives the petitioners of their right to due process of law under the fourteenth amendment.

We have previously held that credit for time spent on probation is not constitutionally required. *Hall v. Bostic*, 529 F.2d 990 (4th Cir.1975), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1733, 48 L.Ed.2d 199 (1976). *See also Hamrick v. Peyton*, 349 F.2d 370, 372 (4th Cir.1965) (no constitutional defect in Virginia procedure which denies parole violator any credit on reinstated sentence for the time served on parole). These decisions are dispositive of the petitioners' claim for constitutional protection for good time credit. Petitioners' argument would have this court hold that *Hall* is inapposite to this case. They assert their release was due entirely to the conduct of the state, and that such conduct amounted to more than simple neglect. Petitioners, however, were not the passive beneficiaries of the state action which resulted in their release. It was petitioners' motions which secured their release by a state trial court which, in fact, had no jurisdiction to effect that release. Learning of an error for which the state, obviously, bears much of the responsibility, the Attorney General initiated proceedings to reincarcerate the petitioners.

At that point, Sherman had been out of prison seven months, Taylor, six months, and, Crowley, only two months. We see no basis on these facts for holding that due process requires the award of good time credit because of the state's conduct in the petitioners' erroneous release.[6]

### III.

■ The answer to the petitioners' *"ex post facto"* contention is simply that they were not reincarcerated by any new rule of law. Rule 1:1 and Va.Code § 53–272 (now § 19.2–303) are unambiguous. When the Supreme Court of Virginia interpreted Rule 1:1 and section 53–272 as depriving a trial court of jurisdiction after the expiration of the defined time frame, it did not establish a new rule. *In re Dept. of Corrections*, 222 Va. at 463–64, 281 S.E.2d at 862–63. The court simply articulated an existing rule of law which had been erroneously applied by a lower court.

### IV.

Finally, petitioners' argument that their reincarceration to serve a validly imposed sentence subjects them to cruel and unusual punishment is completely devoid of merit.

In view of the above, the decision of the district court is affirmed.

AFFIRMED.

convicted after July 1, 1981. Section 53.1–198, however, allowed those convicted prior to July 1, 1981 to elect to be covered under the new system which provides good conduct allowances for time "served." In view of our holding, the difference between the new and old frameworks is not relevant here.

6. The petitioners rely heavily on *United States v. Merritt*, 478 F.Supp. 804 (D.D.C.1979). Without deciding whether we would adopt the conclusion of law in *Merritt*, we feel that the facts of *Merritt* are so different from those here as to make petitioners' reliance inappropriate. Merritt was arrested on an outstanding detainer nearly three years after parole on other charges. During his earlier imprisonment, he had re-

peatedly requested the United States Marshall's Office to make a determination concerning execution of the detainer, but with no success. The district court in *Merritt* held that, in order for it to grant the petitioner's relief, certain factors would have to be present. The erroneous release must not have been attributable to the petitioner, the action of the authorities must have amounted to more than simple neglect, and reincarceration must be unequivocally inconsistent with fundamental principles of liberty and justice. 478 F.Supp. at 807 (citing *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir.1973)). The petitioners' case falls far short of meeting these requirements.