**Bret A. AUE, Petitioner–Appellant,**

v.

**Warren T. DIESSLIN, David Sanchez, and Rod Cozzetto, Respondents–Appellees.**

**No. 89SA287.**

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

Rehearing Denied Oct. 29, 1990.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Ripple, Asst. Atty. Gen., Human Resources, Denver, for respondents-appellees.

Justice MULLARKEY delivered the Opinion of the Court.

This is an appeal of a denial of a petition for a writ of habeas corpus. The petitioner, Bret A. Aue, brought this action in Chaffee County District Court, asking the court to order his release from the custody of the Colorado Department of Corrections (the Department). Aue argued that under the applicable parole provisions he was entitled to mandatory release on parole on April 9, 1989. The trial court dismissed his petition without a hearing, finding that he had stated no grounds entitling him to habeas corpus relief. We affirm.

I.

On July 21, 1986 Aue pled guilty to aggravated incest, section 18–6–302, 8B C.R.S. (1986), and sexual assault on a child, section 18–3–405, 8B C.R.S. (1986). The court sentenced Aue to seven years imprisonment on each count, to be served concurrently, and credited Aue with 187 days for

presentence confinement.[1] The Department projected Aue's parole release date as April 9, 1989. On January 18, 1989, however, the Colorado State Board of Parole (Parole Board) considered and denied his application for parole, deferring further consideration to January 1990. On March 15, 1989, Aue filed a petition for a writ of habeas corpus seeking release from the custody of the Department. The district court denied his petition and Aue took this appeal.

■ Aue argues that he was subject to "mandatory parole" on April 9, 1989, under section 18–1–105(1)(b)(I), 8B C.R.S. (1986), section 16–11–310, 8A C.R.S. (1986), section 17–22.5–301, 8A C.R.S. (1986), and section 17–22.5–302, 8A C.R.S. (1986). Aue argues that section 17–2–201(5)(a), 8A C.R.S. (1986), which provides for certain exceptions from the mandatory parole scheme, does not authorize discretionary parole for his convictions of aggravated incest and sexual assault on a child. However, we rejected this same argument in *Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990). We held that parole is discretionary, not mandatory, for persons convicted of a sex offense as defined in section 16–13–202(5), 8A C.R.S. (1986). Because Aue's convictions are within that definition, *Thiret* is dispositive of Aue's claim that our parole statutes require his release.

## II.

Aue further argues that even if this court construes the parole provisions as authorizing discretionary parole of persons sentenced for a sex offense, applying this interpretation of the statutes to him would be the equivalent of *ex post facto* legislation forbidden by Article I, Section 10 of the United States Constitution, and Article II, Section 11 of the Colorado Constitution, and would violate his right to due process. He also asserts that such interpretation violates his right of equal protection because other similarly situated prisoners were released under the Parole Board's prior interpretation of these statutes. He claims that, at the time of his guilty plea, the long-standing agency interpretation, contrary to the present position of the Parole Board, led him to believe that he would be eligible for mandatory parole.[2] Before considering whether our decision in *Thiret* can be applied to Aue, a brief review of the principles governing "judicial *ex post facto*" is in order.

An *ex post facto* law is one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action," or "that aggravates a crime, or makes it greater than it was, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). *Accord Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *People v. Billips*, 652 P.2d 1060 (Colo.1982). Further, a law is *ex post facto* if it "inflicts a greater punishment, than the law annexed to the crime, when committed." *Id.*

■ Judicial decisions normally are applied retrospectively, that is, "they apply to conduct that occurred before the decision was rendered." *E.E.O.C. v. Vucitech*, 842 F.2d 936, 941 (7th Cir.1988). *Accord Marinez v. Industrial Comm'n*, 746 P.2d 552 (Colo.1987). In some rare cases, however, retrospective application of a judicial decision has been held to violate *ex post facto*

---

1. The offenses for which Aue was convicted were committed between June 1 and July 13, 1981.

2. We agree that the Parole Board formerly interpreted the relevant parole provisions in the manner now urged by Aue. Although there was no evidentiary hearing in this case, in *Thiret* the trial court found such interpretation to exist and we specifically upheld this finding. *Thiret*, at 806. As *Thiret* indicates, for ten years the Parole Board erroneously interpreted these pro-

visions as requiring mandatory parole for all sex offenders except those sentenced under the Sex Offenders Act. The Parole Board changed its interpretation in response to an oral opinion which it received in January 1989 from an assistant attorney general advising the Parole Board that its interpretation of the statutes was in error. At 803. We upheld the Parole Board's current construction of the parole provisions in *Thiret*. There had been no prior judicial interpretation of the relevant statutory language.

principles. Since the federal and state *ex post facto* clauses apply only to legislative acts, a finding of judicial *ex post facto* is based not on the *ex post facto* clause itself, but rather on due process principles. *Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964). In *Bouie,* the Court struck down the retrospective application of a South Carolina Supreme Court decision. The Court found that the interpretation given by the state supreme court to a South Carolina trespass statute was completely unanticipated and therefore the statute, so interpreted, could not be applied to the defendants because it did not give them "fair warning of the criminal prohibition under which [the defendants] now stand convicted...." *Bouie,* 378 U.S. at 361, 84 S.Ct. at 1706.[3]

■ Several lower federal court decisions have considered arguments like those raised by Aue in circumstances analogous to the facts of the present case. In *Lerner v. Gill,* 751 F.2d 450 (1st Cir.), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985), the court of appeals considered a judicial *ex post facto* claim by a Rhode Island habeas petitioner. In 1970, Lerner, the petitioner, was sentenced to two life terms for murder and ten years for conspiracy, all to be served consecutively. In 1973, the Rhode Island Attorney General advised the parole board that under the relevant parole statutes, persons sentenced to multiple sentences not imposed simultaneously were deemed to be serving concurrent sentences for parole eligibility purposes. In 1976, a new attorney general confirmed that this interpretation applied to Lerner and that he would be eligible for parole after ten years. In 1979, however, yet a third attorney general gave his interpretation of the relevant parole statutes, advising the parole board that a prisoner such as Lerner who had been sentenced to

two consecutive life sentences had to serve ten years for each sentence, for a total of 20 years, before becoming eligible for parole. This interpretation of the parole statutes was confirmed by the Rhode Island Supreme Court in *In re Advisory Opinion to the Governor,* 421 A.2d 535 (R.I.1980).

Lerner argued in federal court that the changed interpretation of the effect of the Rhode Island parole provisions could not be applied retrospectively to him without offending *ex post facto* and due process principles. The court of appeals rejected Lerner's arguments holding:

> While [the attorney general] construed the 1970 amendment in [the manner suggested by Lerner], his successor did not, and most significantly, the Supreme Court of Rhode Island has not. *See* R.I. Const.Amend. XII, § 1 (Supreme Court has final revisory jurisdiction over all questions of law). Before petitioner's case the question of the statute's meaning with respect to a prisoner serving consecutive life sentences had not been finally determined. While at first the Parole Board and the then Attorney General thought Lerner was eligible within ten years, they did so as a matter of construing the statute, not in exercise of any power of their own to legislate in such matters.

*Lerner,* 751 F.2d at 457. The court found that the Rhode Island court decision was foreseeable and rejected Lerner's argument that his lengthy reliance on the parole board's erroneous interpretation of the parole statutes precluded the application of the subsequent state supreme court interpretation to his case. The court cogently answered this argument:

> It is a fact of life, unlikely soon to be altered, that new laws are often not challenged and finally interpreted until a number of years go by.

.    .    .    .    .

---

**3.** In *City of Columbia v. Bouie,* 239 S.C. 570, 124 S.E.2d 332 (1962), the South Carolina Supreme Court broadened the scope of its trespass statute to include the conduct of civil rights demonstrators who, although their initial entry upon a drug store premises was legal, subsequently declined to depart from the store's lunch counter

after receiving notice to leave. The Supreme Court found that the interpretation given the statute by the South Carolina court in *Bouie* and in other related cases was "so clearly at variance with the statutory language" and "has not the slightest support in prior South Carolina decisions." *Bouie,* 378 U.S. at 356, 84 S.Ct. at 1704.

We would be most reluctant to hold that the due process clause of the Constitution took away from the State of Rhode Island the power to consider and apply its laws correctly in this situation. Only in rare circumstances have courts allowed the misconstructions of officials to stop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations.

*Lerner*, 751 F.2d at 459. *See also Littlefield v. Caton*, 856 F.2d 344 (1st Cir.1988) (court holds that Maine parole officials were not prohibited under *ex post facto* and due process principles from retrospectively applying decision of Maine Supreme Judicial Court invalidating liberalized parole credit scheme; Maine decision was "readily foreseeable"); *Glenn v. Johnson*, 761 F.2d 192 (4th Cir.1985) (court finds no *ex post facto* violation when North Carolina Parole Board on advice of attorney general changed its interpretation of relevant parole statutes in a manner which increased the minimum time the prisoner had to serve); *Crowley v. Landon*, 780 F.2d 440 (4th Cir.1985) (court finds no *ex post facto* violation when Virginia Supreme Court ordered reincarceration of defendant following its ruling that the trial court lacked jurisdiction to order defendant's release from prison; state supreme court had "simply articulated an existing rule of law which had been erroneously applied by a lower court"); *Mileham v. Simmons*, 588 F.2d 1279 (9th Cir.1979) (court finds no *ex post facto* violation when state supreme court rejected previous attorney general ruling that a sentence for escape from prison was to run concurrently with prisoner's other sentence; *ex post facto* clause does not give prisoner vested right in erroneous interpretation of law).

However, in *Devine v. New Mexico Department of Corrections*, 866 F.2d 339 (10th Cir.1989), the court of appeals held that New Mexico officials could not apply retrospectively the decision of the New Mexico Supreme Court in *Quintana v. New Mexico Department of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983), which rejected a widely accepted interpretation of the state's parole statutes. The question in *Quintana* was which of two parole eligibility statutes prevailed. Both were adopted in the 1977 state legislative session although only the later enacted statute was codified by the statutory compiler. The earlier enacted statute required that a person sentenced to life imprisonment serve thirty years before becoming eligible for parole while the later enacted statute provided for parole eligibility after only ten years. The New Mexico Supreme Court held that the earlier enacted statute prevailed and, thus, an inmate serving a life sentence had to serve thirty years before becoming eligible for parole.

The Tenth Circuit Court of Appeals agreed with petitioner's constitutional challenge to the retrospective application of the *Quintana* decision and held that "the New Mexico Supreme Court violated the due process clause of the Fourteenth Amendment because the manner in which it applied New Mexico parole statutes to [petitioner] was unforeseeable and the decision retroactively enhanced [petitioner's] punishment." *Devine*, 866 F.2d at 339. The court, in finding that the New Mexico decision was not foreseeable, was particularly impressed with the fact that the provision rejected by the *Quintana* decision was the only provision reproduced in the official statutes. The court stated:

The official compilation of the statutes of New Mexico stated that the mandatory prison term on a life sentence was ten years. The only indication to the contrary was an oblique reference in the compiler's notes that an inconsistent provision had been passed by the 1977 legislature.

*Devine*, 866 F.2d at 345. Because the application of the *Quintana* decision to Devine would violate the due process clause, the court ordered that Devine be provided with the parole hearing to which he was entitled under the Parole Board's original interpretation of the statutes. *See also Knuck v. Wainwright*, 759 F.2d 856 (11th Cir.1985) (court holds that the Florida Department of Corrections violated *ex post facto* principles by altering to the prison-

ers' disadvantage its ten-year-old procedure in computing "gain-time" awarded to inmates to reduce their sentence); *Love v. Fitzharris,* 460 F.2d 382 (9th Cir.1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973) (court of appeals holds that the California Department of Corrections could not retrospectively apply its changed interpretation of the statutory requirements for determining parole eligibility for consecutively sentenced "narcotics offenders," where, under the new interpretation, instead of being eligible for parole after three years and four months, the petitioner was eligible for parole after serving five years of his sentence).

■ We conclude that, under the principles as discussed above, the application of this court's decision in *Thiret* to petitioner is not constitutionally proscribed. The key test in determining whether the due process clause precludes the retrospective application of a judicial decision in a criminal case is whether the decision was sufficiently foreseeable so that the defendant had fair warning that the interpretation given the relevant statute by the court would be applied in his case. *See Bouie,* 378 U.S. at 354–55, 84 S.Ct. at 1702–03. We believe that our decision in *Thiret* was foreseeable and, therefore, that Aue had fair warning that the crimes for which he was sentenced would be subject to discretionary parole. The holding in *Thiret* was based on the plain language of section 17–2–201(5)(a), 8A C.R.S. (1986), which states that, as to the parole of "any person sentenced for conviction of a sex offense, as defined in section 16–13–202(5) ... the board has the sole power to grant or refuse to grant parole...." As noted in *Thiret,* sexual assault on a child is defined as a sex offense under section 16–13–202(5). *Thiret,* at 806. Unlike *Devine,* the clear, unambiguous provision applicable in this case was properly codified and readily available. The Parole Board's erroneous interpretation does not compel a different result because the Parole Board "had no power to deprive the state Supreme Court of the right to construe the statute authoritatively." *Lerner,*

751 F.2d at 457. Aue has no vested right to this erroneous interpretation. *Mileham,* 588 F.2d at 1280.

■ We also reject the petitioner's equal protection challenge. In this connection, we agree with the reasoning of the Supreme Judicial Court of Maine in *Chestnut v. State,* 524 A.2d 1216 (Me.1987), a decision on this same issue. The fact that some inmates may have benefitted from the Parole Board's improper interpretation of our parole statutes by gaining their release at a time earlier than they might have if the Parole Board properly understood that parole was discretionary, does not require that the board continue to make such error. *Chestnut,* 524 A.2d at 1221. "[T]he *ex post facto* clause does not give a prisoner a vested right to a favorable, but erroneous, interpretation of the laws." *Lerner,* 751 F.2d at 457. Further, Aue has not shown that there exists a class of similarly situated persons who have not been treated equally. On the contrary, the statute applies to all of those similarly situated, i.e., those persons sentenced for "sex offenses" who have not reached their parole date prior to the Parole Board's decision to change its parole procedure in light of the assistant attorney general's opinion. *See Littlefield v. Caton,* 679 F.Supp. 90, 94 (D.Me.), *aff'd,* 856 F.2d 344 (1st Cir.1988).

### III.

Because we find that our opinion in *Thiret v. Kautzky* is determinative of the issues presented by this case, and because we reject petitioner's arguments that the interpretation of the parole provisions adopted by the *Thiret* opinion cannot be applied as to him, we affirm the judgment of the district court.