**Dennis Reed GRENEMYER, Petitioner,**

v.

**Frank GUNTER and Gale Norton, Respondents.**

**Civ. A. No. 90–B–2166.**

United States District Court, D. Colorado.

Aug. 7, 1991.

Dennis Reed Grenemyer, petitioner pro se.

Paul S. Sanzo, Asst. Atty. Gen., Denver, Colo., for respondents.

## ORDER

BABCOCK, District Judge.

This case is before me on Chief Magistrate Judge Donald E. Abram's recommen-

dation that petitioner's 28 U.S.C. § 2254 petition be dismissed with prejudice.

Petitioner has filed timely specific objections to the recommendation. I review the recommendation de novo.

■■■ The Chief Magistrate Judge's thorough and exhaustive analysis of petitioner's claims is correct legally. Indeed, although petitioner may be eligible for parole, parole for him is discretionary, not mandatory. *Grenemyer v. Gunter,* 811 P.2d 1098 (Colo.1991). The Colorado Supreme Court's definitive holding in his State case in this regard undergirds the Chief Magistrate Judge's analysis. Accordingly,

IT IS ORDERED that the above action be dismissed with prejudice.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

D.E. ABRAM, Chief United States Magistrate Judge.

Petitioner Dennis Reed Grenemyer, currently incarcerated at Fremont Correctional Facility, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner originally sought relief before the Federal District Court as to the issue of the denial of parole under the sex offender statute COLO.REV.STAT. § 17–2–201(5)(a) (1986), in case number 90–B–1296. In that case it was determined that Petitioner had failed to exhaust his state court remedies and was subsequently dismissed. Petitioner sought an appeal before the Tenth Circuit. 930 F.2d 33. Petitioner subsequently filed this action 90–B–2166. This Court recommended dismissal of this case on grounds that Petitioner had again failed to exhaust his state court remedies. Upon review, the Honorable Judge Babcock then dismissed this case for lack of jurisdiction due to Petitioner's appeal before the Tenth Circuit in case 90–B–1296. However, Petitioner again sought reconsideration after the Tenth Circuit remanded 90–B–1296 back to the District Court. Petitioner subsequently filed his objections to this Court's recommendation for dismissal

for failure to exhaust and subsequently submitted a Motion to Dismiss Without Prejudice Grounds Two, Four, and Five. This motion was granted and Judge Babcock remanded the petition to Magistrate Judge Abram for further proceedings.

In Petitioner's first and third grounds, Petitioner asserts that "All of petitioner's good and earned time is vested and he should have been discharge [sic] from incarceration including parole effective August 7, 1990. This is a due process violation, equal protection violation an ex post facto violation and constitutes cruel and unusual punishment." Petition, p. 6. In ground three Petitioner asserts that he "is subject to mandatory parole and ought to have been released on parole effective August 7, 1990. This constitutes a due process violation, equal protection violation, ex post facto and constitutes cruel and unusual punishment." Petition, p. 10.

Pursuant to Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, this matter has been referred to Magistrate Judge Donald E. Abram. This matter is limited as to Petitioner's first and third grounds. Magistrate Judge Abram has reviewed the grounds raised in this petition and the applicable law, and hereby recommends that the Petition be dismissed with prejudice.

## BACKGROUND

Petitioner was convicted on two counts of sexual assault on a child. Petitioner was thereafter sentenced to four years with one day credit for presentence confinement. Petitioner commenced serving his sentence on December 22, 1988 and has been in continuous incarceration until the present time. Petitioner's sentence originally was scheduled to be discharged on December 21, 1992. Petitioner, however, has received 215 days of "earned time" credit which has modified his discharge date to May 16, 1992.

Petitioner has also received "good time" credit for good behavior. These "good time" credits are the subject of dispute in this petition for habeas corpus. Petitioner

asserts that with the good time credits applied, that he should be released from incarceration. Petitioner further asserts that the current interpretation of the application of "good time" credits and discretionary parole for sexual offenders is a violation of Petitioner's constitutional rights. Respondents have, however, denied that Petitioner should be released and assert that the good time credits Petitioner has earned only deduct time from Petitioner's *parole eligibility date* and does not affect his *discharge date*. Further, Respondents assert that parole for sexual offenders is discretionary and that the Parole Board has determined that Petitioner should not be paroled at this time.

## GROUND ONE

 Petitioner asserts that he should be released on "mandatory parole." Petitioner asserts, "[a]ll of petitioner's good time and earned time is vested and he should have been discharge [sic] from incarceration...." However, Petitioner's parole is not vested, but discretionary. Further, Petitioner, has no constitutional right to be released on parole or in any other way before the end of his sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). Although it is true a state statute can create a constitutionally protected liberty interest in parole, this liberty interest does not arise if the statute gives state officials complete discretion to grant or deny parole. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). The statute before this court provides for such discretion. COLO.REV.STAT. § 17–2–201(5)(a) (1986) states,

> [A]s to any person sentenced for conviction of a sex offense, as defined in section 16–13–202(5), C.R.S., ... *the board has the sole power to grant or refuse to grant parole* and to fix the condition thereof and *has full discretion to set the duration of the term of parole granted,* but in no event shall the term of parole exceed the maximum sentence imposed

upon the inmate by the court or five years, whichever is less.

*Id.* (emphasis added).

Petitioner was convicted and sentenced on "sexual assault on a child" pursuant to a sex offense as defined in section 16–13–202(5). The statute's clear language states that if a party has been sentenced pursuant to this statute, "the board has the sole power to grant or refuse to grant parole." *Id.* Petitioner does not have a statutory right to parole and parole is discretionary pursuant to the language of this statute. Petitioner therefore has had no Constitutional violation.

Further, a state supreme court's rulings on matters of state law are controlling in this Court. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). The holdings in *Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990) and *Aue v. Diesslin,* 798 P.2d 436, 438–41 (Colo. 1990) clearly state that parole is discretionary as to sexual offenders. In *Thiret* the Colorado Supreme Court stated, "We find, under the plain language of these sections, that the Parole Board has discretion to deny or to grant parole to all persons sentenced for a sex offense as defined by section 16–13–202(5)...." *Thiret,* 792 P.2d at 807. In *Aue* the Colorado Supreme Court stated, "We held that parole is discretionary, not mandatory, for persons convicted of a sex offense as defined in section 16–13–202(5), 8A C.R.S. (1986). Because Aue's convictions are within that definition, *Thiret* is dispositive of Aue's claim that our parole statutes require his release." *Aue,* 798 P.2d at 438.

The decision to grant or deny parole for sexual offenders under COLO.REV.STAT. § 16–13–202(5) (1986) is purely within the discretion of the parole board. Petitioner never had a vested right to that parole and therefore his constitutional rights have not been violated. Petitioner, however, argues that section 17–2–201(5) was previously interpreted by the parole board to require mandatory parole for sexual offenders. Petitioner, asserts that the change in the interpretation of that statute violates his rights of due process, equal protection, the

right against ex post facto laws and right against cruel and unusual punishment. While it is true that the parole board may have previously applied the statute incorrectly, that does not indicate that there has been a violation of the ex post facto clause or any other constitutional violation by the judicial interpretation of § 17–2–201(5)(a). Petitioner's contentions are therefore without merit.

## EX POST FACTO CLAUSE

■■■ Article 1, § 9 of the U.S. Constitution and Colorado Constitution ban *ex post facto* laws. The *ex post facto* clause forbids any retroactive application of a *new* law. Petitioner does not complain of an ex post facto clause violation but complains of a change in the interpretation of the law as it was originally written. Petitioner merely complains of a procedural error. The *ex post facto* clause,

> [f]orbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was *prescribed when the crime was consummated.* Thus, even if a statute merely alters penal provisions accorded by grace of legislature, it violates the clause if it is both retrospective and *more onerous than the law in effect on the date of the offense.*

*Weaver v. Graham,* 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981) (emphasis added).

■■ There has been no new statute which was implemented after petitioner committed his offense. Petitioner merely asserts that the current interpretation of the statute is now more onerous than what was previously applied. Although the *parole board* interpretation before *Thiret* was that parole for good time was mandatory for all prisoners, there had been no prior *judicial* interpretation of this lan-

guage before *Thiret. Aue v. Diesslin,* 798 P.2d at 438 n. 2. Furthermore, an agency may retroactively change its practice to conform to the law without violation of the ex post facto clause. *See Caballery v. United States Parole Com,* 673 F.2d 43, 47 (2d Cir.1982), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). In *Caballery* the court stated,

> Although 28 C.F.R. § 2.10(c) did not constitute a change in the law, it did apparently, herald a change in the Parole Commission's practice, which, prior to 1977, was not to toll a youth offender's sentence for the time during which he was in abscondence from supervision. This practice was based, however, on the Commissions's erroneous interpretation of the YCA. Although much deference is usually accorded an administrative agency's determination, an agency's misinterpretation of a statute is not binding on a court's construction of that statute. By the same token, an agency MISINTERPRETATION of a statute cannot support an ex post facto claim.

*Id.* at 47 (citations omitted).

Section 17–2–201(5)(a) was in effect when Petitioner committed his offense, the interpretation which was applied was consistent with the clear language of the statute, the Colorado Supreme Court has held that the correct application of this statute is that parole is discretionary for sex offenders under 16–13–202(5), and therefore application of this statute does not violate the ex post facto clause. In *Devine v. New Mexico Department of Corrections,* 866 F.2d 339, 341 (10th Cir.1989), it states, "For a law to be considered ex post facto 'it must be retrospective, that is, it must apply to events occurring *before its enactment,* and it must disadvantage the offender affected by it.'" *Id.* (citation omitted). The Tenth Circuit also stated, "Since no act passed by the legislature after Devine's offense was applied, the ex post facto clause is not implicated." *Id.* at 342. However, a new interpretation of a previously designated statute may violate the *due process clause* if it is unforeseeable. *Id.* at 345.

## DUE PROCESS

█ Petitioner asserts that the due process clause has been violated by the retroactive interpretation of CoLo.Rev.Stat. § 17–2–201(5)(a) (1986). The Tenth Circuit in *Devine* stated that although the ex post facto clause may not be implicated by a retroactive ruling of a Court, the due process clause may be violated by such a ruling "if it was unforeseeable." *Devine* 866 F.2d at 345.

The Tenth Circuit went on to hold that the New Mexico Supreme Court holding on parole eligibility was unforeseeable. The court stated,

A defendant in Devine's shoes, deciding whether to plead guilty in December 1979 to an offense committed in August 1979, had no indication that a prisoner serving a life sentence was required at that time to serve thirty years, rather than ten.... Even an in-depth inquiry by a dedicated and educated student of New Mexico law would have revealed nothing to foreshadow the New Mexico Supreme Court opinion.

*Id.*

However, where a judicial decision under the applicable statute is "reasonably foreseeable," there is no violation of the due process clause. The statute's interpretation here, unlike the statute before the Court in *Devine* was foreseeable and was undeniably authorized by its clear language. The Colorado Supreme Court in *Aue v. Diesslin,* stated

The key test in determining whether the due process clause precludes the retrospective application of a judicial decision in a criminal case is whether the decision was sufficiently foreseeable so that the defendant had fair warning that the interpretation given the relevant statute by the court would be applied in his case.... The holding in *Thiret* was based on the plain language of section 17–2–201(5)(a), 8A C.R.S. (1986), which states that as to the parole of "any person sentenced for conviction of a sex offense, as defined in section 16–13–202(5) ... the board has the sole power to grant or refuse to grant parole...."

Unlike *Devine,* the clear, unambiguous provision applicable in this case was properly codified and readily available. The Parole Board's erroneous interpretation does not compel a different result because the Parole Board "had not power to deprive the state Supreme Court of the right to construe the statute authoritatively."

*Aue,* 798 P.2d at 441.

The interpretation by the Colorado Supreme Court in *Thiret* and *Aue* was foreseeable. The language of the statute clearly indicated the power of the Parole Board to grant or deny parole was discretionary. This statute as it applied to sex offenders was interpreted *judicially* for the first time in *Thiret* and the Colorado Supreme Court cannot be bound by the previous incorrect interpretation by the Parole Board. The language of the statute makes it clear that discretionary parole for sex offenders was forseeable. There has been no violation of Petitioner's due process rights. *See also, Mileham v. Simmons,* 588 F.2d 1279, 1280 (9th Cir.1979); *Lerner v. Gill,* 751 F.2d 450 (1st Cir.1985), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985); *Littlefield v. Caton,* 856 F.2d 344 (1st Cir.1988); *Glenn v. Johnson,* 761 F.2d 192 (4th Cir.1985); *Crowley v. Landon,* 780 F.2d 440 (4th Cir.1985).

Petitioner asserts that applying 17–2–201(5)(a) to give the Parole Board discretion over parole goes against the plain language of 17–2–201(4)(a). The applicable language which Petitioner refers to states,

The board may parole any person who is sentenced or committed to a correctional facility when such person has served his minimum sentence, less time allowed for good behavior, and there is a strong and reasonable probability that the person will not thereafter violate the law and that his release from institutional custody is compatible with the welfare of society.

*Id.*

However, this section read in conjunction with the Colorado Supreme Court's reading of 201(5)(a) does not conflict. Further, 201(4)(a) gives discretion to the Parole

Board to deny some inmates parole if the inmates "release from institutional custody is [not] compatible with the welfare of society." The language of the statute plainly states the board "may" parole the inmate. Such language gives the Parole Board some discretion to determine when parole should be granted. When read in conjunction with 201(5)(a), it is clear how that discretion is to be exercised. There is no conflict between the two statutes and the Colorado Supreme Courts interpretation if read in conjunction with the following subsection which states that "the Parole board has sole power to grant or refuse to grant parole." COLO.REV.STAT. § 17–2–201(5)(a) (1986). The Parole Board has used such discretion in this case and there is no incompatibility with the two statutes as they are interpreted by the Colorado Supreme Court.

## EQUAL PROTECTION

■ Petitioner has asserted that his rights of equal protection were violated by the application of 201(5)(a) to sex offenders. However, Petitioner is not a member of a "suspect class." Nor does Petitioner allege that there exists a class of similarly situated persons who have not been treated equally. Further, the statute in question violates the equal protection clause only if it does not bear any rational relationship to a legitimate state interest. *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). In *Vasquez v. Cooper*, 862 F.2d 250, 251–52 (10th Cir.1988), it states

Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. A state practice will not require strict judicial scrutiny unless it interferes with a "fundamental right" or discriminates against a "suspect class" of individuals.

Unlike other prisoners, obedient behavior in a prison does not indicate that the sex offender has truly reformed. Sex offenders are not placed in circumstances which show that they have rehabilitated. Because of the societal interest in making sure that sex offenders have reformed, the legislature found a need to give the Parole Board discretion to make sure that the sex offenders have participated in the sex offender programs instituted to help those inmates change and to not be of harm to society. The discretionary treatment by the parole board is therefore rationally related to a legitimate governmental purpose. *Id.*

There is no equal protection violation merely because of the Parole Board misinterpreted the statute as to former inmates. As found in *Aue v. Diesslin*, 798 P.2d at 441, there is no equal protection right to an incorrect interpretation of the law by a state agency. The state is not required to perpetuate its error. *Caballery v. United States Parole Com*, 673 F.2d 43 (2d Cir. 1982), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

## CRUEL AND UNUSUAL PUNISHMENT

■ Petitioner asserts that he has been subject to cruel and unusual punishment because of the parole board's misinterpretation section 17–2–201(5)(a) as it applied to sex offenders and the change in the application of this statute after *Thiret v. Kautzky*. However, contrary to Petitioner's assertions, "[a] sentence within the statutory limits is not cruel and unusual punishment. Absent a showing of illegality or abuse of discretion, such a sentence will not be disturbed on appeal." *United States v. MacClain*, 501 F.2d 1006, 1013 (10th Cir.1974) (citations omitted). Petitioner's sentence has not gone beyond the statutory limits. There is no illegality or abuse of discretion. Petitioner's parole has merely been delayed pending Petitioner's treatment in the sex offender's program. Petitioner has no constitutional right to parole. *See supra*, pp. 1435–36 of this recommendation. The mere interpretation by the Colorado Supreme Court of the meaning of the language of 17–2–201(5)(a) does not render Petitioner subject to cruel and unusual punishment. Such a finding

would lead to the absurd result of having a cruel and unusual punishment violation every time a court rendered an opinion defining the authority of the state. Petitioner's rights have not been violated. Petitioner's complaint should therefore be dismissed.

IT IS THEREFORE RECOMMENDED that Petitioner Dennis Reed Grenemyer's Petition be dismissed with prejudice.

FURTHER, IT IS ORDERED that under Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, the parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 676–83, 100 S.Ct. 2406, 2412–16, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985).

DATED at Denver, Colorado this 22nd day of July, 1991.