Douglas **LEACH** et al.,

v.

George **VOSE,** Director, Department of Corrections.

No. 96–25–Appeal.

Supreme Court of Rhode Island.

Jan. 23, 1997.

---

Paula Lynch Hardiman, Paula Rosin, Asst. Public Defenders, for Plaintiffs.

Anthony A. Cipriano, Aaron Weisman, Asst. Attorney General, for Defendant.

## OPINION

BOURCIER, Justice.

This matter comes before us on the appeals of both the inmate-applicants and the director of the Department of Corrections (department) from the partial granting of their respective cross-motions for summary judgment in the Superior Court.

## I

**Facts and Travel**

Douglas Leach (Leach) is the lead plaintiff for a group of some one hundred plus inmates who had applied for post-conviction

relief in the Superior Court.[1] The common basis for their applications is the contention that the computation of good time and industrial time credits by the department, pursuant to G.L.1956 § 42–56–24, is in violation of constitutional and statutory provisions. A year after the applications for post-conviction relief were filed, both the department and the inmate-applicants filed cross-motions for summary judgment. On January 2, 1996, the Superior Court trial justice rendered a bench decision on those cross-motions for summary judgment.

In his decision, the trial justice held that the Administrative Procedures Act (APA), G.L.1956 chapter 35 of title 42, was inapplicable to the department's adoption of a method for calculating good time and industrial time credits. The trial justice then determined that the correct method of calculation for good time and industrial time credits required the inmates to earn, and therefore to be awarded, credits on a month-to-month basis and not "upfront" at the beginning of an inmate's sentence, as asserted by the inmate-applicants. Additionally, the trial justice concluded that when an inmate commits an infraction of prison regulations, he or she should, pursuant to § 42–56–24(c), lose *one day of good time already accumulated for each day that the prisoner is shut up or otherwise disciplined for bad conduct.* The trial justice believed, however, that the inmate should not be prevented from accumulating good time credits for the month in which the infraction occurred because prevention of that accumulation would be in contravention to § 42–56–24(c) and would result in what the trial justice referred to as a "so-called double whammy."

The trial justice finally held that no ex post facto violation resulted from the change in the department's method of calculating an inmate's good time and industrial time credits. He did hold, however, that the inmate-applicants had a liberty interest in the accrual and loss of good time credits that required, pursuant to due process principles, notification

"on the anniversary of the time the sentence commenced, and at such other reasonable times as the prisoner may request, or the prisoner's representative, such as an attorney, then the ACI is under an obligation, it would seem, to tell the prisoner how much time he or she has accumulated by way of good time and industrial time and how much of that time has been lost because of disciplinary infractions as of the time the request is made."

## II

### Award of Good Time and Industrial Time Credits

■ The inmate-applicants first challenge the trial justice's determination regarding the proper method for awarding good time and industrial time credits. We note, as an initial matter, that when the trial justice made his determination that good time credits be awarded on a monthly basis and not upfront at the beginning of an inmate's sentence, as asserted by the inmate-applicants, he did not then have the benefit of our detailed opinion in *Barber v. Vose,* 682 A.2d 908 (R.I.1996). In that opinion, we explained that the specific language in § 42–56–24 required that no good time or industrial time credits be awarded prior to "an inmate's monthly compliance with and obedience to prison rules and regulations." *Id.* at 912. Even without our guidance in *Barber,* however, the trial justice nonetheless came to the same conclusion as did this Court. Accordingly, the trial justice's decision as to the month-to-month award of good time and industrial time credits was correct.

## III

### Administrative Procedures Act

■ The trial justice's conclusion that the APA was not applicable to the department's adoption of a method for calculating good time and industrial time credits was also correct. In delineating the procedure agencies must follow when adopting agency rules,

---

1. The inmate-applicants were never formally certified as a class pursuant to Rule 23 of the Superior Court Rules of Civil Procedure.

the APA specifically excludes from its mandate "statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public." G.L.1956 § 42–35–1(h). The computation method through which good time and industrial time credits are awarded is clearly a matter of internal management and, thus, is not subject to the requirements of the APA.

The amount of good time and industrial time credits an inmate can receive and the requirements that must be met before receiving those credits are both specifically prescribed by § 42–56–24, as we discussed in detail in *Barber, supra.* The actual method of computation of those credits is left to the discretion of the department. That calculation method, however, does not affect the number of days an inmate can receive as good time or industrial time credits since that number is already fixed in § 42–56–24. For each inmate whose sentence is for more than six months' imprisonment and not for life, an inmate is entitled to receive one day per month, for each year of the inmate's sentence, not to exceed ten days per month. Furthermore, the statute's method of calculation does not affect the conditions that must be complied with before the inmate becomes eligible to receive those credits, such as compliance with the rules and requirements of the institution. Additionally, the method of calculation does not affect the procedure for receiving the credits, which, as we explained in *Barber*, requires both the recommendation of the assistant director of institutions/operations and the consent of the director of the Department of Corrections or his or her designee. *Barber*, 682 A.2d at 912–15; *see also* § 42–56–24. Thus, the method of calculation chosen by the department, in its discretion, only affects the manner in which the department accomplishes the task of granting good time credits, as those credits are delineated in § 42–56–24. That calculation method is, therefore, purely a matter of internal management and is not subject to the requirements of the APA.

## IV

### "Double Whammy"

According to the trial justice's decision, an inmate who is disciplined for bad conduct must deduct from his or her previously earned good time credits the amount of time during which he or she was actually disciplined, pursuant to § 42–56–24(c), but he or she can still earn good time credits for that month if he or she acts, with the exception of the punished bad behavior, in accordance with the rules and requirements of the prison. That conclusion is erroneous.

■ Section 42–56–24(c), which requires that "[f]or every day a prisoner shall be shut up or otherwise disciplined for bad conduct * * * there shall be deducted one day from the time he or she shall have gained for good conduct," must be read in conjunction with § 42–56–24(a), which only permits the award of good time credits for months in which the inmate "appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline." In accordance with that clear and unambiguous language in § 42–56–24(a), an inmate cannot receive good time credits for any month during which he or she is "subjected to discipline." Additionally, § 42–56–24(c) requires that one day be deducted from already accumulated good time credits for each day of discipline for bad conduct. Thus, in addition to *not accruing* good time credits for the month in which the inmate was disciplined, the inmate must also deduct from his or her *already accumulated* good time credits the number of days during which the inmate was subjected to discipline. That does not amount to a "double whammy," as asserted by the inmate-applicants, because, as we stated in *Barber*, "so-called good time credit for good behavior while incarcerated is not a constitutional guarantee * * * but is instead an act of grace created by state legislation that may provide therein for the manner in which good time credits may be granted for compliance with, or revoked for violations of, prison rules and regulations." *Barber*, 682 A.2d at 914 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974); *Tuitt v. Fair*, 822 F.2d 166, 180 (1st Cir. 1987)).

The Legislature in § 45–56–24 clearly intended that an inmate would not be entitled

to good time credits for a month in which he or she has been disciplined for bad conduct. The Legislature also deemed it necessary to provide for additional deterrent penalties to discourage inmate violation of prison rules and requirements, and in response to that need, it enacted subsection (c) of § 42–56–24. That subsection mandates that, in addition to not permitting an errant inmate to accumulate good time credits for a month in which the inmate exhibits bad conduct, the inmate, in addition, loses one day of already earned good time credits for each day the inmate is disciplined, to be deducted from the inmate's earlier accumulation of monthly credits. The clear and unambiguous language of § 42–56–24 precludes any other logical reading of the statute. Accordingly, the trial justice's interpretation of § 42–56–24 is erroneous, and the department's appeal on the so-called double whammy issue is therefore sustained.

## V

### Ex Post Facto Clause [2]

■ The trial justice was correct in his determination that the ex post facto clause has no application to the inmate-applicants' claims. Although the department has not always construed the good time and industrial time statute in the manner that we affirmatively set forth in *Barber*, the ex post facto clause is not implicated when the department changes its procedures to conform to the mandates of the statute. "[A]n agency may retroactively change its practice to conform to the law without violation of the ex post facto clause." *Grenemyer v. Gunter*, 770 F.Supp. 1432, 1436 (D.Col.1991), *aff'd*, 968 F.2d 20, 1992 WL 113737 (10th Cir.1992). In this case, as in *Grenemyer*, the department, like the parole board in *Grenemyer*, incorrectly interpreted a good time statute during a time in which "there had been no prior *judicial* interpretation of this language." *Id.* As was said in *Lerner v. Gill*, 751 F.2d 450 (1st Cir.1985), although an

agency might have the power to construe a statute, it has "no power to deprive the state Supreme Court of the right to construe the state statute authoritatively." *Id.* at 457.

Our authoritative interpretation of § 42–56–24 in *Barber* might differ from the interpretation the department utilized prior to *Barber*. However, that prior erroneous interpretation of § 42–56–24 existing at the time of our decision in *Barber* did not prohibit us from giving our authoritative interpretation of that statute. *See Lerner, supra*. Although the department was within its discretion to interpret the statute, it interpreted it erroneously and when that issue was properly before us, which it was not in *State v. Ouimette*, 118 R.I. 525, 375 A.2d 209 (1977), or its progenitors, we had both the authority and the obligation to interpret that statute in accordance with the law. *See D'Arezzo v. D'Arezzo*, 107 R.I. 422, 267 A.2d 683 (1970). Unfortunately for the inmate-applicants, our interpretation was less generous than that of the department, but "the ex post facto clause does not give a prisoner a vested right to a favorable, but erroneous, interpretation of the law." *Lerner*, 751 F.2d at 457 (citing *Mileham v. Simmons*, 588 F.2d 1279, 1280 (9th Cir.1979)). Accordingly, there is no violation of the ex post facto clause.

## VI

### Due Process

■ The inmate-applicants assert that the department cannot change its method of calculating good time and industrial time credits without violating the inmates' liberty interests and offending the due process clause. Although the trial justice did not directly address that contention, he did conclude that in order to conform to the dictates of the due process clause, inmates must be informed periodically of the status of their good time and industrial time credits. Consequently, he established a rule that an inmate must be

2. The inmate-applicants raised their ex post facto and due process arguments prior to our decision in *Barber*. Therefore, when they refer to the unconstitutional change in the department's good time and industrial time credit calculation method, they are referring to an earlier and different change in calculation method than the one required by *Barber*. The inmate-applicants' arguments are equally applicable to both changes, however. Accordingly, we will address both the ex post facto and due process contentions of the inmate-applicants in light of the change required by *Barber* since that is the most recent change in calculation method.

told, "on the anniversary of the time the sentence commenced, and at such other reasonable times as the prisoner may request," how much good time and industrial time credits the inmate has accumulated and how much of that time has been lost as a result of disciplinary action taken against the inmate. The trial justice's sua sponte establishment of a rule requiring periodic notice of good time and industrial time credit status was not appealed by either of the parties, so we do not address it here. However, we do conclude, that despite the beliefs of the inmate-applicants, due process is not implicated in the department's change in the method of calculating the award of good time and industrial time credits.

In *Barber* we stated:

"Our good-behavior or good-time sentence credit statute § 42–56–24 is *discretionary* in its application. It is dependent upon an inmate's monthly compliance with and obedience to prison rules and regulations as well as the further affirmative discretionary action on the part of two different department of corrections officers. * * * *Wolff [v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] procedures are only required when the statute in question is mandatory or specifically limits the discretion of prison department authorities. Because the department of corrections officials designated in § 42–56–24 are vested with discretion in granting or refusing to grant good-behavior and institutional industries time credits, depending upon the inmate's monthly record of conduct, the predicate for Barber's invocation of the Fourteenth Amendment protection as construed and applied in *Wolff* is totally nonexistent. *See, e.g., Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451, *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Jackson v. Hogan,* 388 Mass. 376, 446 N.E.2d 692 (1983)(prison inmate has no vested constitutional right to good-time deductions)." *Barber,* 682 A.2d at 912.

Because, as we said in *Barber,* there is no liberty interest created by our good time and industrial time credit statute since it is completely discretionary, the department's modification of its manner of calculating good time and industrial time credits does not implicate the due-process clause. The Department can decide, within its discretion, whether to award good time and industrial time credits at all, so an inmate cannot claim a violation of his or her liberty interests when the Department decides to change the actual method of calculation.

Moreover, since our decision in *Barber*—wherein we interpreted § 42–56–24 and mandated that a change in good time calculation methods was " 'reasonably foreseeable,' there [was] no violation of the due process clause." *Grenemyer,* 770 F.Supp. at 1437. " '[T]he decision [interpreting the statute] was sufficiently foreseeable so that the * * * [inmate-applicants] had fair warning that the interpretation given the relevant statute by the court would be applied in [their] case[s].' " *Id.*

In *State v. Ouimette,* 118 R.I. 525, 375 A.2d 209 (1977), we alluded to the fact that there was an interpretation of § 42–56–24 (then designated as § 13–2–44) that differed from the manner in which the department was then calculating the inmate good time and industrial time credits. *Id.* at 527–28 n. 2, 375 A.2d at 210 n. 2. However, we noted that "we left open which of these two constructions should prevail" because the construction method issue was not before us in that case. *Id.* Our then indication of a method of calculation different from the department's existing method of calculation should have put the inmate-applicants on notice that perhaps the department's choice of methods then being utilized was not correct.

Additionally, even if *Ouimette* did not serve to put the inmate-applicants on notice that the department's existing method of calculating good time and industrial time credits might change, the plain language of § 42–56–24 clearly indicated that the proper award of good time and industrial time credits was to be on a month-to-month basis and not up front. Thus, the statute itself rendered the change in the method of calculating good time and industrial time credits entirely foreseeable. Section 42–56–24(a) then provided,

and continues to provide, in relevant part, that

"*for each month* that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, *appears by the record* to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall * * * be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence." (Emphasis added.)

The language of that statute clearly requires the award of good time and industrial time credits to be made on a monthly basis. To interpret the statute in any other manner would create the absurd result that "a convicted defendant, upon his arrival at the prison, and before serving one day of his or her sentence, would be awarded good prison behavior time credits as well as institutional industries work time credits before that prisoner had exhibited any good behavior or worked in any prison industry." *Barber*, 682 A.2d at 911. Although that result might be warranted when a good time and industrial time credit statute contemplates it, our statute clearly does not intend such a result. Our Legislature intended the good time and industrial time credits to be awarded "*for each month* that a prisoner * * * *appears by the record* to have faithfully observed all the rules and requirements of the institutions not to have been subjected to discipline." (Emphasis added.) Section 42–56–24(a). Our interpretation of the statute in *Barber* was certainly foreseeable given the plain language of that statute. Due process is not violated by interpreting a statute in accordance with its plain and unambiguous language. *See, e.g., Lerner v. Gill*, 751 F.2d at 457–59.

Accordingly, the trial justice's omission to rule formally on the inmate-applicants' alleged violation of their liberty interests caused by the department's modification of its method of calculating good time and industrial time credits was not erroneous, in view of our holding in *Barber*.

## VII

### Conclusion

For the reasons hereinabove related, the inmate-applicants' appeal is denied and dismissed and the department's appeal is sustained. The judgment of the trial justice is affirmed in part and reversed in part. The papers of this case are remanded to the Superior Court with directions to enter an order in accordance with this opinion.